## DECLARATION OF MICHAEL MONTEVIDONI

I, Michael Montevidoni, declare as follows:

1.      I am a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF").  I have knowledge of the facts set forth herein and could and would testify to those facts fully and truthfully if called and sworn as a witness.

2.      On the morning of January 24, 2025, ATF Special Agent Matt Beals and Los Angeles Police Department Detective Nellie Knight interviewed Jonathan Rinderknecht ("defendant").  The interview began at defendant's apartment at ███ North Sycamore Avenue in Los Angeles.  During the interview, defendant agreed to accompany the Special Agent Beals and Detective Knight to the origin area of the Lachman Fire.  That same day, Special Agent Beals and Detective Knight drove defendant to The Summit neighborhood in the Pacific Palisades.  The three of them walked up the Skull Rock Trail to the "Hidden Buddha" clearing, where Special Agent Beals and Detective Knight continued to ask defendant questions about the Lachman Fire.

3.      Special Agent Beals surreptitiously recorded the interview.  I also was able to listen, in real time, to much of the interview, via a transmitter.  For portions of the interview, Special Agent Beals lost cell-phone reception due to the spotty service near the Hidden Buddha clearing.

4.      I was in close communication with Special Agents Beals as he drove back with Detective Knight and defendant from the Pacific Palisades to defendant's apartment.  Around 5:00 p.m. on January 24, 2025, Special Agent Beals, Detective Knight, and defendant arrived back at defendant's apartment building on North Sycamore Avenue in Los Angeles.  Defendant invited Special Agent Beals and Detective Knight up to his apartment to have tea.  As the three of them got off the elevator and entered the hallway outside of defendant's apartment, I served defendant with the search warrants that I had obtained for his person (25-MJ-227), his apartment (25-MJ-228), and

his rental car (25-MJ-371) (collectively, the "Three Search Warrants").  The investigative team, including Special Agent Beals, Detective Knight, myself, and other ATF agents and law enforcement personnel, then executed the Three Search Warrants.

5.    I have spoken at length with Special Agent Beals (and Detective Knight) about their interview of defendant on January 24, 2025, and have reviewed reports regarding the interview.  I know that, before the execution of the Three Search Warrants on the evening of January 24, 2025, Special Agent Beals knew, as a result of the interview, that (1) defendant admitted that late in the evening of December 31, 2024, he had parked his white Genesis GV60 at the Skull Rock Trailhead and walked up the trail to the Hidden Buddha clearing; (2) defendant admitted that he was alone on the hillside that night and that he did not see any fireworks nearby; (3) defendant showed the Special Agent Beals and Detective Knight a video that defendant had recorded on his phone a few minutes before the Lachman Fire started showing that there were no fireworks or other people in the area; (4) defendant told the investigators (correctly) that the Lachman Fire began on the hillside just below and south of the Hidden Buddha clearing (the investigative team was not aware of any other way for defendant to have known this non-public information other than having witnessed the start of the fire); (5) defendant repeatedly lied to Special Agent Beals and Detective Knight by saying that he first saw the fire (and first called 911) after he left the Hidden Buddha clearing and walked down much of the trail toward the Skull Rock Trailhead parking lot; and (6) defendant admitted that he brought a lighter with him when he walked up to the Hidden Buddha clearing, but he claimed that he could not remember what kind of lighter he brought.

6.    On or about January 21, 2025, the investigative team obtained data from T-Mobile regarding the location of one of defendant's phones.  The data showed that (1) when defendant first attempted to call 911 at approximately 12:12:31 a.m.[1] on January 1,

---

[1] The initial data obtained from T-Mobile included the times of defendant's 911 calls in minutes (and not seconds) (e.g., 12:12 a.m.).  In March 2025, T-Mobile provided more detailed data, which included the times of defendant's 911 calls in seconds (e.g.,12:12:31 a.m.).

2025, he was slightly below the Hidden Buddha clearing (within approximately 30 feet of the origin area of the fire); (2) when defendant made a second 911 call at approximately 12:12:50 a.m., he was in the Hidden Buddha clearing; (3) at approximately 12:13:40 a.m., defendant again attempted to call 911 from the Hidden Buddha clearing; (4) defendant attempted to call 911 several more times while descending the hill; and (5) at approximately 12:17 a.m., defendant called 911 again, and for the first time his call connected; GPS data for this call shows that he was almost at the bottom of the trail.

7.    Most of the digital devices that we seized from defendant during the execution of the Three Search Warrants were heavily encrypted.  As a result, the government was able to extract and seize only a limited amount of evidence from those devices.

8.    On or about January 20, 2025, I served separate legal process on Meta for evidence relating to defendant's Facebook account.  On January 24, 2025, I received documents from Meta regarding defendant's account.

9.    During defendant's interview on January 24 (prior to the seizures), he told Special Agent Beals and Detective Knight about trying to contact "Peter" (P.F.), whom he had lived with in a house a few blocks from the "Hidden Buddha" clearing but whom he had not spoken to in two years.  During the interview, defendant looked up the specific timing of the communications, and he told Special Agent Beals and Detective Knight that he had tried to call "Peter" at 11:42 p.m. on December 31, 2024 (just before he walked up to the Hidden Buddha clearing) and again at 12:25 a.m. on January 1, 2025 (upon returning to the bottom of the hill).

10.    The Apple Fitness search warrant application (25-MJ-1763, filed on March 26, 2025) mentioned a video and other data found in defendant's iPhone.  My team already had obtained that video as a result of the Apple search warrant (25-MJ-193). The evidence supporting the probable cause in the Apple Fitness search warrant

application was based on information obtained from Apple as a result of the Apple search warrant (25-MJ-193).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration is executed at Los Angeles, California, on January 28, 2026.

/s/
_____
Michael Montevidoni