TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental Crimes & Consumer Protection Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
DANBEE C. KIM (Cal. Bar No. 350014)
Assistant United States Attorneys
Environmental Crimes & Consumer Protection Section
    1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3359/8644/6530
    Email:    mark.a.williams@usdoj.gov
            matthew.o'brien@usdoj.gov
            danbee.kim2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JONATHAN RINDERKNECHT,<br>  aka "Jonathan Rinder,"<br>  aka "Jon Rinder,"<br><br>    Defendant. | No. CR 25-833-AH<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 2 TO ADMIT EVIDENCE OF SUPERSEDING INTERVENING NEGLIGENCE OF THE LOS ANGELES FIRE DEPARTMENT AND CALIFORNIA STATE PARKS<br><br>[Declaration of Matthew O'Brien and exhibits thereto filed concurrently herewith (under seal)]<br><br>Hearing Date:   May 13, 2026<br>Hearing Time:   10:00 a.m.<br>Location:   Courtroom of the Hon. Anne Hwang |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Mark A. Williams, Matthew W. O'Brien, and Danbee C. Kim, hereby files this opposition to defendant JONATHAN RINDERKNECHT's Motion in

Limine No. 2 To Admit Evidence of Superseding Intervening Negligence of the Los Angeles Fire Department and California State Parks (Dkt. No. 91).

This opposition is based upon the attached memorandum of points and authorities, the concurrently filed (under seal) Declaration of Matthew O'Brien and the exhibits thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 22, 2026

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division


_____/s/_____
MARK A. WILLIAMS
MATTHEW W. O'BRIEN
DANBEE C. KIM
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**Table of Contents**

I.      INTRODUCTION ....................................................................................................1

II.     THE LEGAL FLAWS IN THE DEFENSE'S LAFD MOTION ...........................1

III.    THE FACTS REGARDING THE LAFD'S RESPONSE ......................................2

        A.    The LAFD's Response on January 1, 2025 ...................................................3

        B.    The LAFD's Response on January 2, 2025 ...................................................6

        C.    The LAFD's Response on January 3, 2025 ...................................................8

        D.    January 4, 2025 through January 6, 2025 ....................................................10

        E.    January 7, 2025 ............................................................................................11

IV.    CONCLUSION.....................................................................................................11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The government opposes defendant JONATHAN RINDERKNECHT's ("defendant") Motion in Limine No. 2 To Admit Evidence of Superseding Intervening Negligence of the Los Angeles Fire Department and California State Parks (the "Defense's LAFD Motion").

As a legal matter, the Defense's LAFD Motion should be denied for the reasons set forth in the Government's Motion in Limine To Exclude Evidence and Argument Regarding the Response of the Los Angeles Fire Department to the Fire Defendant Ignited (the "Government's LAFD Motion," Dkt. No. 89).[1]

As a factual matter, the defense continues to mislead the Court regarding what actually happened after the Lachman Fire, in order to paint an exaggerated picture of the LAFD's allegedly "extraordinary" mistakes. The defense's desire to distort basic facts about the LAFD's response illustrates why an extended mini-trial on these irrelevant issues would be necessary if the Court were to grant the Defense's LAFD Motion.

### II.    THE LEGAL FLAWS IN THE DEFENSE'S LAFD MOTION

The government will not belabor the points below given that the Government's LAFD Motion covers the same ground.

Defendant is correct that a "basic tenet of criminal law is that, when a statute requires that the defendant's conduct resulted in an injury, the government must prove that the defendant's conduct was the legal or proximate cause of the resulting injury." (Defense's LAFD Motion at 11:10-12 (emphasis added); see also id. at 12:6-8 (noting, correctly, that 18 U.S.C. §§ 844(f) and (i) "explicitly require[] that the defendant's conduct directly or proximately cause personal injury or death to trigger enhanced

---

[1] When the parties met and conferred on April 7, 2026, they agreed that the government would file a motion in limine about the Los Angeles Fire Department ("LAFD"), and the defense would file an opposition, so that the Court would not have to deal with two dueling motions on the same issue. For unknown reasons, the defense went ahead and filed its own motion about the LAFD the next day.

penalties").)  But defendant ignores that none of the statutes charged here "requires that the defendant's conduct resulted in an injury," and the indictment does not allege that any injuries or deaths resulted from defendant's conduct.  That is fatal to defendant's argument.

With one exception, all of the criminal cases cited by the defense in support of its intervening or superseding cause argument involved indictments (or sentencing arguments) alleging that an injury or death resulted from the defendant's conduct, thus bringing the issue of proximate cause into play.[2]  As noted in the Government's LAFD Motion, because the indictment here does not allege that any injuries or death resulted from defendant's arson, the government does not have to prove proximate cause, and the tort concept of intervening or superseding causation is inapplicable as a matter of law.

The other cases that defendant relies upon are civil cases and hence are irrelevant.  (See Defense's LAFD Motion at 13:11-21.)

Finally, defendant's claim the response of the LAFD "was entirely independent of any act or conduct of Mr. Rinderknecht" borders on the absurd.  (Id. at 14:19-20.)  Defendant does not, and cannot, cite a single case holding that a fire department's response to a fire is independent from the setting of the fire; such a theory would render the term "independent" meaningless.  Because the LAFD's response to the fire was not "of independent origin" from defendant's ignition of the fire, defendant's attempt to frame the issue as a jury question fails.  Mendez v. Cnty. of Los Angeles, 897 F.3d 1067, 1081 (9th Cir. 2018) (quoting Exxon Co. v. Sofec, 517 U.S. 830, 837 (1996)).

**III.   THE FACTS REGARDING THE LAFD'S RESPONSE**

Given the supposed centrality of the LAFD's response to the defense, one would hope that the defense would understand basic facts about the response.  Instead, the defense is either ignorant of these facts or is deliberately misleading the Court.

---

[2] The one exception was a Clean Water Act case alleging criminal negligence, rather than an intentional act.  See United States v. Hanousek, 176 F.3d 1116 (9th Cir. 1999).

2

To be clear: the facts regarding the LAFD's response are irrelevant to defendant's criminal liability, for the reasons set forth in the Government's LAFD Motion. But the government addresses them herein so that the Court has an accurate summary of what actually happened between January 1 and January 7, 2025, at the Lachman Fire's burn scar. The facts below shed light on the lack of credibility of the defense's statements, such as the "level of deceit in the charging document belies what anyone would fathom of the United States of America" and "[n]one of this is even up for debate." (Defense's LAFD Motion at 7:10-11, 17.)

### A.   The LAFD's Response on January 1, 2025

The LAFD began deploying a large, coordinated response to the Lachman Fire moments after 911 calls (including defendant's numerous calls) reported the fire. In the early morning darkness on January 1, 2025, the LAFD established a command post for the fire at Fire Station 23 in the Pacific Palisades (see Exh. 1 (Mario Garcia deposition) at 23-24); deployed air assets including a helicopter and approximately three water droppers (see id. at 40-42); deployed more than 30 companies of firefighting crews (see id. at 31-32; Exh. 2 (exhibit 1 to the Mario Garcia deposition) at 1); Exh. 3 (Martin Mullin deposition) at 27); and brought in hand crews from the Los Angeles County Fire Department ("LACFD") to cut fire lines on the hillside. (See Exh. 1 (Mario Garcia deposition) at 39.) Due to the rapid response of the LAFD and LACFD, the fire spread only 8-10 acres before it was contained at around 4:30 a.m. that morning (see id. at 31-32; Exh. 2 (exhibit 1 to the Mario Garcia deposition) at 1.). None of the nearby homes were damaged, and nobody was hurt.

LAFD Captain Thomas Kitahata arrived at the Lachman Fire burn scar at around 6:30 a.m. on January 1, 2025, to provide relief to the firefighters who had battled the fire all night. (See Exh. 4 (Thomas Kitahata deposition) at 38-45.) He testified that the fire was mostly out, but there were still "smokers" (small hot spots that needed to be extinguished). (See id. at 43.) He estimated that at least 20-30 firefighters remained on

the scene that day, extinguishing hot spots with hose lines and hand tools (he stayed until approximately 4:00 p.m.).  (See id. at 48-54.)

LAFD Battalion Chief Martin Mullen, a fifth-generation firefighter with more than 25 years' experience (including approximately 50 "mop-up" operations at brush fires), arrived on the scene at around 7:00 a.m. on January 1 to take over the mop-up operations from LAFD Battalion Chief Mario Garcia, who had been in charge of the command post since the fire began.  (See Exh. 3 (Martin Mullen deposition) at 91, 94-95.)  Battalion Chief Mullen walked the perimeter of the burn scar four times that day, personally feeling the ground for heat and observing his crews putting out hot spots.  (See id. at 27, 33-35, 40, 74-76, 93.)  Specifically, he walked the perimeter at approximately 7:30 a.m., 9:00 or 9:30 a.m., 12:30 p.m., and 4:00 or 4:15 p.m.  (Id. at 40-41.)  He left at approximately 5:00 p.m., when there were no longer any hot spots, ember casts, smoldering, crackling, or smoke.  (Id. at 91, 94-96.)  Nonetheless, he decided to leave the hose lines on the hillside overnight as a precaution in case any problems arose.  (Id. at 68.)

The defense criticizes California State Parks Sergeant Christy Araujo for her "outrageous malfeasance" at not being alarmed by the sight of smoke in the Lachman burn scar.  (Defense's LAFD Motion at 3:8-18, 18:12.)  And the defense reproduces a photo that Sergeant Araujo took showing smoke near the burn scar.  (Id. at 4:1-14.)[3]  But the defense fails to inform the Court when Sergeant Araujo was on the hillside, stating only that it was after the LAFD supposedly "abandoned its firefighting efforts."  (Id. at 3:10.)  That is nonsense.  In fact, Sergeant Araujo was at the scene on the morning of January 1, 2025, around 8:00 a.m., to take a few photographs for her report (she had been staffed at the command post during the fire).  (See Exh. 5 (Christy Araujo deposition) at 28, 88.)  As Sergeant Araujo testified, she had witnessed approximately a dozen fires in the Santa Monica Mountains while working there over the past 24 years,

---

[3] The defense claims the photograph shows "ignitable fluids."  (Defense's LAFD Motion at 4:13-14.)  That is false.

and it was common for brush fires to smolder after they had been contained by firefighters.  (See id. at 28, 33.)  By 8:00 a.m., the LAFD had not "abandoned its firefighting efforts"; it had suppressed the fire, diverted its air resources elsewhere, and kept at least two fire engines at the scene under the direction of Battalion Chief Mullen.  (See Exh. 1 (Mario Garcia deposition) at 52-53.)  As the testimony of Battalion Chief Mullen and Captain Kitahata described above shows, it was normal for the "smokers" or hot spots to be active that day, and for that reason crews of firefighters remained at the burn scar long after Sergeant Araujo departed.  (See id. at 52-53; Exh. 2 (exhibit 1 to Mario Garcia deposition) at 1 (showing that the LAFD units remained on scene until at least 4:41 p.m.).)  The defense's claims to the contrary are simply made up.[4]

Perhaps the apex of the defense's misdirection is the image included on page 9 of the Defense's LAFD Motion.  The image shows smoke rising above the Lachman Fire burn scar.  As with Sergeant Araujo's photograph, the defense does not disclose to the Court when the image was created.  Instead, the defense implies that the image is from one of "multiple hiker videos (in the possession of the government) taken on the Lachman hillside between January 2 and January 7, 2025, showing visible smoke rising from the burn scar area."  (Defense's LAFD Motion at 8:28-9:2.)  That is false.

In fact, the image comes from one of two videos that two bystanders (A.B. and C.B.) took on the afternoon of January 1, 2025.  (Exh. 6 at USA_00000820-23 (¶¶ 12, 18(d), 18(i).)  In one of the videos, which lasts 18 seconds, the narrator (A.B.) can be heard saying, "The last of the hot spots."  (Exh. 14 (file "IMG_4028.mp4," with Bates-number USAO_D_00000126).)  In the other video, which lasts nine seconds, three LAFD firefighters can be seen extinguishing hot spots, and firehoses are visible across

---

[4] Also made up is the defense's claim that Sergeant Araujo "simply took a picture and went home."  (Defense's LAFD Motion at 3:18.)  In fact, Sergeant Araujo testified that after she visited the burn scar on the morning of January 1 she "went to Malibu sector and worked the rest of my shift."  (Exh. 5 (Christy Araujo deposition) at 35:22-23.)  The defense takes a similar jab at the firefighters, claiming that they picked up the firehoses on January 2 (as discussed below) so that they "could be released and go home."  (Defense's LAFD Motion at 8:2.)  There is no evidence to support that claim.

the burn scar (one of the firefighters is using one of the hoses to spray water on the burn scar).  (Exh. 15 (file "IMG_7027.mp4," with Bates-number USAO_D_00000130).)  So even though these videos are evidence of the LAFD's mop-up activities <u>on</u> January 1, the defense uses them to mislead the Court as to the LAFD's alleged negligence <u>after</u> January 1.[5]

### B.   The LAFD's Response on January 2, 2025

On January 2, 2025, LAFD crews returned to the scene to monitor the area and retrieve the firehoses that they had deliberately left on the hillside the day before.  Although dozens of firefighters were on the scene on January 2, defendant's argument focuses on a single firefighter/paramedic (Scott Pike) who testified that he saw smoke that morning.

LAFD Battalion Chief Garcia, who had more than 27 years' experience, went to the Lachman Fire burn scar at around 9:30 a.m. on January 2, with around 5 companies of firefighters.  (<u>See</u> Exh. 1 (Mario Garcia deposition) at 118-120.)  Battalion Chief Garcia walked the perimeter of the 8-10 acre burn scar on the morning of January 2 and saw no smoke or smoldering, and heard no crackling.  (<u>See id.</u> at 119-124.)  He said that 10 to 15 firefighters were on the scene at the time, and none of them raised any concerns about leaving the hillside.[6]  (<u>See id.</u> at 122.)  He was at the burn scar for more than an hour.  (<u>See id.</u>)  At around 4:30 p.m. that same day, he returned to the burn scar, to make sure no equipment had been left on the hillside.  (<u>See id.</u> at 124-125.)  Again, he and a colleague saw nothing concerning.  (<u>See id.</u>)

---

[5] The same witness (A.B.) visited the burn scar again on January 4, 2025.  "He did not see anything smoldering on January 4, 2025."  (Exh. 6 at USA_00000820 (¶ 12).)

[6] The defense claims – twice – that Pike said that he "voiced his concerns to the on-scene Battalion Chief Mario Garcia."  (Defense's LAFD Motion at 2:11-13; <u>id.</u> at 8:19-21 (same).)  That is false.  The defense cites to page 62 of the transcript, in which Pike says that he spoke with a captain – not a Battalion Chief – and that Pike did not know the captain's name, but thought he was from Engine Company 69.  (Defense's LAFD Motion, Exh. A at 62:8-21.)  Earlier in his deposition, Pike testified that he had never heard of Battalion Chief Garcia.

LAFD Captain Alex Gonzalez, who had more than 20 years' experience, also responded to the Lachman Fire burn scar on January 2, 2025.  He spent about three hours at the scene, saw nothing problematic, and did not hear any of his 10-15 colleagues that day voice any concerns.  (See Exh.7 (Alexander Gonzalez deposition) at 26-28, 34, 42-43.)

LAFD Captain Scott Hambly gave similar testimony about January 2.  Captain Hambly was on the hillside for over an hour that day.  He did not see, smell, or hear any smoke, live embers, or smoldering, and he had no concerns about leaving the scene.  (See Exh. 8 (Scott Hambly deposition) at 25-27.)

LAFD Captain David Sander, a 32-year LAFD veteran, gave similar testimony.  He had responded to the fire on January 1 (from just after midnight to approximately 8:00 a.m.), and returned on the morning January 2 to pick up the hose lines.  On January 2, he saw no smoke or hot spots.  (See Exh. 9 (David Sander deposition) at 20, 40.)

The defense claims that LAFD Captain Michael McIndoe testified that he "also observed the burn scar smoldering."  (Defense's LAFD Motion at 2:23.)  That is false.  In the testimony the defense cites (Exhibit B), Captain McIndoe said no such thing.  To the contrary, Captain McIndoe testified that, when he was still at Fire Station 69 (2 miles away from the Lachman Fire) before he went to the Lachman Fire burn scar for the first time on January 2, he voiced his concerns about the plan to pick up the fire hoses that day, because of the weather forecasts.  (See Exh. 10 (Michael McIndoe deposition) at 21-27.)  The defense attaches page 26 of Captain McIndoe's testimony (when he said he told Battalion Chief Garcia about his concerns), but omits the next page (when he clarified that he was still at Fire Station 69 and had not yet been to the burn scar).  Based on this slight of hand, the defense argues that "Captain McIndoe's concerns were ignored by Chief Garcia."  (Defense's LAFD Motion at 3:3-4.)  That is nonsense; as noted above, Battalion Chief Garcia walked the perimeter of the burn scar later that morning.  (See also Exh. 10 (Michael McIndoe deposition) at 70-73 (same).)

7

Captain McIndoe testified that he did not see any sign of smoldering materials when he first walked up the burn scar later that day.  (See id. at 31.)  He walked up and down the burn scar for approximately two hours, retrieving fire hoses.  (See id. at 31-32.)  When he saw a single "small wisp of smoke" that was "barely perceptible," he went back down the hill to retrieve a "backpack pump" that could spray water, went back to the wisp of smoke, sprayed the ground and dug it up with a hand tool, ensured it was cold, and moved on.  (Id. at 35-39.)  When he left, he had no concern that the burn scar represented a safety threat to anyone; his concerns from earlier that day were based solely on weather forecasts.  (See id. at 72-73.)

The defense's claim that Captain McIndoe told a colleague that it was "a 'bad idea' to pull those hoses from the unextinguished fire and that with hot weather and high winds forecasted a potential rekindling was possible" (Defense's LAFD Motion at 2:25-26) contains at least three misstatements.  First, Captain McIndoe never testified about seeing an unextinguished fire on January 2; as noted above, he said he saw a single wisp of smoke.  Second, Captain McIndoe did not testify that high winds were the basis for his concern; he testified that the forecast for a "little bit warmer" weather was what he "keyed in on."  (Exh. 10 (Michael McIndoe deposition) at 22:1-3.)  Third, Captain McIndoe never used the phrase "bad idea" in his testimony; the defense's repeated reliance on that quotation (see also Defense's LAFD Motion at 3:2 (same); id. at 9:19 (same)) is simply made up.

**C.    The LAFD's Response on January 3, 2025**

The defense claims over and over that the LAFD "did not return to the Lachman burn scar at any point between January 2 and January 7, 2025."  (Defense's LAFD Motion at 2:18-19; see also id. at 10:5-9 (same); id. at 1:10-11 (same); id. at 18:13-14 (same).)  These statements are all false.

In fact, the LAFD responded to the Lachman Fire burn scar again on January 3, 2025.  A document reproduced in the Defense's LAFD Motion inadvertently confirms this basic fact: on page 6, the defense has reproduced an LAFD incident report from

8

January 3, 2025 (oddly, the motion does not discuss the document). The document catalogues the LAFD's response to a 911 call on January 3, 2025, about a "WISP OF SMOKE ABOUT ½ MILE SOUTH" of the Lachman Fire burn scar; the "COMMENT" section states "12:08:07 E23 RPTS N/S" (i.e., Engine Company 23 reported no smoke at the scene after responding to the 911 call).

On January 3, 2025, two LAFD fire engines and an LAFCD hand crew returned to the Lachman Fire burn scar.[7] (See Exh. 1 (Mario Garcia deposition) at 90-93.) The fire crew from Engine 23 again walked up the hillside and examined the burn scar. (See id. at 93.) Nobody saw or smelled any smoke. (See id.)

Battalion Chief Garcia – whom the defense claims did "nothing" in response to two complaints about smoke on January 2, which he purportedly "ignored" (Defense's LAFD Motion at 2:12, 3:4) – returned to the scene for a third time on January 3, 2025. (See Exh. 1 (Mario Garcia deposition) at 90-93.) After he conferred with LAFD personnel from Engine 23, Battalion Chief Garcia also checked his iPad, which had access to live camera feeds from nearby wildfire-surveillance cameras focused on the hillside; the video footage showed no smoke. (See id.; see also Exh. 11 (Cesar Garcia deposition) at 45-46 (same).)

The deposition testimony of additional firefighters on the scene on January 3 corroborates Battalion Chief Garcia's testimony. For example, LAFD Captain Cesar Garcia testified about responding to the hillside on January 3, 2025, and seeing nothing of concern. (See Exh. 11 (Cesar Garcia deposition) at 46-47.) Captain Garcia felt the ground with his hands, feet, and knees to check for heat; he felt nothing. (See id. at 67-70.) Captain Garcia also looked at the video footage of the hillside with Battalion Chief Garcia; neither saw anything of concern. (See id. at 51-52.)

---

[7] The document reproduced on page 6 of the Defense's LAFD Motion confirms this as well: "12:20:16 …LA COUNTY FIRE CAMP 14 WORKING IN THE AREA UNTIL THIS AFTERNOON."

LAFD firefighter Michael Contreras, who had more than 23 years' experience, gave similar testimony.  He testified that there were no flames, smoke, or heat coming from the Lachman Fire burn scar on January 3.  (See Exh. 12 (Michael Contreras deposition) at 33.)  He was at the scene for approximately 35 minutes, looking for smoke, but did not see, smell, or hear anything problematic.  (See id. at 89-90.)  He communicated his observations to Captain Garcia.  (See id. at 46.)

With the benefit of hindsight, defendant faults the LAFD for not using thermal imaging to check the hillside for fire.[8]  The LAFD typically deployed thermal imaging devices in structure fires (to see where a fire might be burning inside of walls), as opposed to brush fires.  (See id. at 59-60.)  As Battalion Chief Mullen testified, the LAFD's thermal scanners were ill-suited to large areas because they needed to be used within a few feet of a suspected heat source; in his 25 years' experience, he had never seen one used in a brush fire; and there was no LAFD policy requiring their use in brush fires.  (See Exh. 3 (Martin Mullen deposition) at 38, 102-103.)  And on January 3, 2025, the LAFD personnel on the hillside did not see any evidence that the fire was smoldering underground, so they had no reason to consider the use of thermal imaging (even if they had had the necessary equipment).

**D.   January 4, 2025 through January 6, 2025**

The Motion also ignores January 4, January 5, and January 6.  Although the defense identifies one possible exception, it does not appear that any of the neighbors or people using the hiking trails next to the burn scar saw anything amiss during those three days.[9]  As a result, there were no 911 calls regarding the Lachman Fire burn scar on

---

[8] The Defense's LAFD Motion cites to Exhibit G regarding thermal imaging (Defense's LAFD Motion at 9:25-10:4); Exhibit G has nothing to do with thermal imaging.

[9] The potential exception is a hiker who thought he or she saw "faint and hard to pinpoint" "wisps" of smoke coming from the burn scar on January 4, 2025, but then could not see them an hour later so "thought that perhaps I had just seen some dust or ash blowing around."  (Defense's LAFD Motion, Exh. F.)

those three days.  This is fatal to defense counsel's bombast: the LAFD cannot be grossly negligent for not responding to non-existent 911 calls for three days.[10]

### E.    January 7, 2025

The defense also ignores evidence from the morning of January 7, 2025.  A neighbor rode his mountain bike up to the Hidden Buddha clearing (at the top of the burn scar) at approximately 9:06 a.m. on January 7, 2025 (the first 911 call reporting the Palisades Fire – which started on the same hillside – was at approximately 10:25 a.m.).  (See Exh. 13 at 2 (¶ 5).)  The neighbor took videos and photos of the burn scar.  (See id.) There was no smoke visible.  (See id.)

## IV.   CONCLUSION

The defense repeatedly accuses a federal agent with 17 years' experience (and 8 years' experience as a Certified Fire Investigator) of lying when he stated in the Complaint that the Lachman Fire continued undetected and invisible underground prior to January 7, 2025.  (Defense's LAFD Motion at 1:23-28; id. at 6:20-24 (same); id. at 7:7-12 (same); id. at 17:29-22 (same).)  In fact, the evidence confirms that is exactly what happened, regardless of what witnesses may have seen on January 1 and 2.

If the defense is so confident about the supposedly exculpatory nature of firefighters' testimony, one wonders why the defense is making the extraordinary claim to the Court that the deposition transcripts should be admissible at trial.  (Defense's LAFD Motion at 16:27-17:11.)  The defense claims that deposition testimony by employees of the City of Los Angeles are party admissions by the United States.  (Id.) That is nonsense, as is the notion that deposition testimony about a year-old event could be a present sense impression.  The defense's unusual request suggests that the defense has concerns about how the firefighters might actually testify in defense of an arsonist.

---

[10] The defense's claim that "multiple emergency services calls from members of the public" occurred in "the days just prior to" January 7, 2025, appears to be unsupported by any evidence.   (Defense's LAFD Motion at 6:26-28.)  The only 911 call potentially connected to the Lachman Fire burn scar after January 1, 2025, was the call on the morning of January 3, 2025, reporting smoke a half-mile from the burn scar (as discussed above).

The Palisades Fire was a tragedy.  In hindsight, it is easy to point fingers.  But the evidence – when not cherry-picked and distorted – suggests that the LAFD's response to the Lachman Fire appeared reasonable to the highly experienced firefighters on the scene as it unfolded.  Defendant's attempt to transform his trial into a misguided and much lengthier trial about the LAFD should be denied.

Dated: April 22, 2026                    Respectfully submitted,

BILAL A. ESSAYLI
First Assistant United States Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division


        /s/
MARK A. WILLIAMS
MATTHEW W. O'BRIEN
DANBEE C. KIM
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA