# EXHIBIT A

## Expert Disclosure Regarding Dr. Kevin L. Kelm

The government will call Dr. Kevin L. Kelm, a subject matter expert in arson and explosion investigations and criminal investigative analysis, as an expert witness in the analysis and classification of behavioral patterns and motivational factors in arson cases. Further information regarding Dr. Kelm's training and experience is set forth in his attached curriculum vitae ("C.V.").

**Statement of Anticipated Opinions**: Dr. Kelm's analysis and opinions are set forth in the attached report that was produced in discovery (USAO_00051317-USAO_00051327). In summary, as set forth in detail in his report, we anticipate that Dr. Kelm will testify regarding his analysis and conclusions concerning defendant's antecedent behavior, crime scene behavior, and post-offense behavior.

**Bases and Reasons**: The bases and reasons for Dr. Kelm's opinions are his training and experience as well as materials produced in discovery.

**Qualifications**: Dr. Kelm's qualifications are further set forth in more detail in the attached C.V.

**Publications**: The attached C.V. sets forth Dr. Kelm's publications.

**Prior Testimony**: The attached C.V. sets forth Dr. Kelm's prior testimony.

Dr. Kevin L. Kelm
Arson and Bombing Behavioral Analysis, LLC

# +Kevin L. Kelm, Ph.D.

## Curriculum Vitae

18 Marsh Point
Gulf Shores, AL  36542
kevin.kelm@arsonbombing.com

Kevin L. Kelm, Ph.D., is a subject matter expert in arson and explosion investigations and criminal investigative analysis (profiling). He retired in 2011 as a Supervisory Special Agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). Dr. Kelm was a criminal profiler at the Federal Bureau of Investigation's (FBI) Behavioral Analysis Unit (BAU), providing expert analysis and consultation on violent crimes, with a focus on arson, bombing, weapons of mass destruction, and counterterrorism. His expertise includes fire and explosives investigations, criminal investigative analysis, homicide, and other violent crimes, bomb threats, premises liability, deterrence of offenders, crime scene assessment, profiling unidentified offenders, staged crimes, suicide and self-harm by fire or explosives, interviewing and interrogation, signature behavior, and crime linkage analysis. Dr. Kelm is a subject matter expert in the Risk Assistance Network and Exchange (RANE). He holds a Research Fellowship from Texas State University, Center for Geospatial Intelligence and Research, and is the author of a textbook on criminal investigative analysis (criminal profiling). He is a Certified Explosives Specialist (ATF-Ret.) and Certified Fire Investigator (IAAI-Ret.).

## EDUCATION

**Doctor of Philosophy** – Business Administration - Criminal Justice – Northcentral University – Scottsdale, Arizona –2016
Dissertation Title: *Examining arson criminal profiling: Serial arson behaviors as predictors of arson motivation.*
Committee: *Scott Mire, PhD (Chair); Gabriele Suboch, PhD; Andrew N. Carpenter, PhD*

**Master of Science** - Criminal Justice - Virginia Commonwealth University – Richmond, VA – 2003
Thesis Title: *Classifying bomber characteristics using crime scene indicators*.

**Bachelor of Science** - Criminal Justice - University of Wisconsin - Milwaukee, Wisconsin – 1986

## TEACHING EXPERIENCE

Lecturer – University of Wisconsin-Milwaukee, Helen Bader School of Social Welfare, Milwaukee, WI
Instructor – National American University, Henley-Putnam School of Strategic Security, Rapid City, SD
Faculty – Criminal Justice, Daymar College, Bowling Green, KY
Visiting Lecturer – Marymount University, Arlington, VA
Visiting Lecturer – Bellarmine University, Louisville, KY
Senior Police Instructor – U.S. Department of State, Narcotics Assistance Section, Bilateral Implementation Office (Merida Initiative), Policía Federal, Mexico City, Mexico.
Instructor - ATF National Academy, Federal Law Enforcement Training Center, Glynco, GA
Instructor - Federal Law Enforcement Training Center, Glynco, GA
Instructor - FBI National Academy, Quantico, VA
Instructor – National Center for Explosives Training and Research, Redstone Arsenal, AL
Instructor - National Center for the Analysis of Violent Crime (NCAVC)
Instructor - International Criminal Investigative Analysis Fellowship (ICIAF)
Visiting Instructor – National College of District Attorneys
Visiting Instructor – Canadian Police College, Royal Canadian Mounted Police, Ottawa, Ontario, Canada
Instructor – International Law Enforcement Academy (ILEA), Gabarone, Botswana
Instructor - International Law Enforcement Academy (ILEA), Bangkok, Thailand
Instructor – Department of Defense, Joint Task Force Paladin, International Security Assistance Force, Kandahar, Afghanistan

## WORK EXPERIENCE

### 2011 – Present
President & member, Arson & Bombing Behavioral Analysis, LLC – Criminologist/criminal profiler in private practice specializing in arson and bombing investigations.

### 2016 – 2024
Lecturer, University of Wisconsin – Milwaukee, Milwaukee, WI, Helen Bader School of Social Welfare, Department of Criminal Justice – Undergraduate and graduate criminal justice studies.

### 2016 – 2018
Instructor, National American University, Henley-Putnam School of Strategic Security – Terrorism & Counterterrorism Studies undergraduate and graduate program for an accredited online university.

### 2013 – 2015
Instructor, Daymar College, Bowling Green, KY – Criminal justice instructor in the undergraduate degree program. Areas of instruction include policing, corrections, criminal justice theory, crime analysis, CJ research, CJ management & planning, white-collar crime, chemical dependence & abuse, geographic criminology, business ethics, crisis intervention, terrorism and homeland security, political science, and American history.

### 2012
Senior Police Instructor, Pro-Telligent International under contract to the U.S. Department of State, Narcotics Assistance Section, Bilateral Implementation Office, U.S. Embassy, Mexico City, Mexico. Developed and delivered explosives training programs for the Sistema de Desarrollo Policial (SIDEPOL) of the Policía Federal. Program delivery included classroom and explosives range instruction for graduate-level students matriculating in a Master's degree program in explosives investigation and forensic analysis.

### 2004 – 2011
Supervisory Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF); Resident Agent in Charge of the Bowling Green, KY Field Office; supervised ATF special agents and task force officers responsible for enforcement of the Federal firearms, arson, and explosives laws in forty counties of Western Kentucky; supervised Western Kentucky Arson Task Force and the Western Kentucky Gun Crimes Task Force; board member of the Bowling Green-Warren County Drug Task Force; provided criminal investigative analysis support to ATF profilers at the FBI Behavioral Analysis Unit. Retired from ATF November 30, 2011. Certified ATF Explosives Specialist (CES). Detailed to locations in Afghanistan in 2010 in support of the DOD Joint Improvised Explosive Device Defeat Organization (JIEDDO) mission to train US, coalition (International Security Assistance Force), and Afghan national forces in post-blast and homemade explosives (HME) investigations.

### 1997 – 2004
Supervisory Special Agent, ATF, criminal profiler assigned to the Federal Bureau of Investigation (FBI) National Center for the Analysis of Violent Crime (NCAVC), FBI Academy, Quantico, Virginia. Provided criminal investigative analysis services to ATF, the FBI, and other federal, state, local, and international police and fire agencies; principally assigned to arson, explosives, counter-terrorism, and weapons of mass destruction investigations; recommended investigation strategies, interviewing and interrogation techniques; provided information on unknown offender characteristics (profiles), prosecution strategies, and on-site crime scene assessments; provided analyses of statements and threats, staging and signature behavior, and crime linkage; testified as an expert witness to support search warrant applications and criminal prosecutions; participated in the investigation at the scene of the terrorist attack on the Pentagon on September 11, 2011 and the subsequent investigation of the 9-11 terrorist attacks; consulted on the development of interview strategies for enemy combatant detainees. Certified ATF Explosives Specialist (CES).

### 1988 – 1997
Special Agent, ATF, assigned to the St. Paul Field Office and transferred to the Milwaukee Field Office; conducted criminal investigations of violations of the Federal arson, explosives, and firearms

laws including bombings, arson, arson homicides, and arson-for-profit; served arrest and search warrants, testified in Federal and state courts; conducted surveillance and electronic surveillance including court-ordered interception of wire and audio communications; investigated organized crime organizations including outlaw motorcycle gangs; member of the ATF National Response Team and participated in the investigation of the terrorist bombing of the Murrah Federal Building in Oklahoma City, Oklahoma; bomb management team member, 1996 Atlanta Olympic Games Bomb Management Center.  Certified ATF Explosives Specialist (CES).

**1979 – 1988**
Police Officer, West Allis, WI Police Department; uniformed patrol enforcing state laws and municipal ordinances; criminal investigations of homicides and other causes of death, burglary, thefts, domestic violence, and other crimes; assigned to Special Investigations Unit; conducted investigations of drug trafficking, burglary rings, and organized crime; assigned to SWAT unit as crisis negotiator.

**1977 – 1979**
Police Officer, Village of Hartland, WI Police Department; uniformed patrol enforcing state laws and municipal ordinances; criminal investigations of causes of death, burglary, thefts, domestic violence, and other crimes.

**1976-1977**
Police Officer, University of Wisconsin–Milwaukee Police Department; uniformed patrol enforcing state laws and Wisconsin Administrative Code for a university campus community of 40,000 students and faculty at various locations in the greater Milwaukee area.


## AWARDS AND HONORS

Golden Key – International Honor Society, 2014
Alpha Phi Sigma – National Criminal Justice Honor Society, 2003
Foreign Service Medal - Bureau of Alcohol, Tobacco, Firearms, and Explosives – 2011
Quality Step Increase – Bureau of Alcohol, Tobacco, Firearms, and Explosives – 2009
Hostile Action Award – Bureau of Alcohol, Tobacco, and Firearms - 2004
Special Act Award – Bureau of Alcohol, Tobacco and Firearms – 1991 (2), 1993 (2), 1997, 1998, 1999, 2001, 2002
Special Achievement Award – Bureau of Alcohol, Tobacco, and Firearms –1989
Citations – West Allis, WI Police Department – 1982, 1983, 1985


## CERTIFICATIONS & FELLOWSHIPS

Fellow – International Criminal Investigative Analysis Fellowship
Research Fellow – Texas State University, Center for Geospatial Intelligence and Research
Certified Fire Investigator - International Association of Arson Investigators, Inc. #25-073 (Retired)
Certified Explosives Specialist - Bureau of Alcohol, Tobacco, Firearms, and Explosives (Retired)
Practical Blasting Fundamentals – International Society of Explosives Engineers
Certificate – Firefighter 1 – Milwaukee Safety Academy – Milwaukee, Wisconsin - 1995


## PROFESSIONAL MEMBERSHIPS

Academy of Criminal Justice Sciences (ACJS)
International Criminal Investigative Analysis Fellowship (ICIAF)
International Association of Arson Investigators (IAAI)
International Association of Bomb Technicians and Investigators (IABTI)

**SPECIALIZED TRAINING**

Received over 2900 hours of training in specialized areas relating to law enforcement, fire, explosives investigations, and criminal investigative analysis; provided training for over 100 seminars, classes, and presentations on fire, explosives, and criminal investigative analysis throughout the United States and internationally. U.S. Department of State Professionalization Program certificate (instructor development). Itemized list available upon request.

**RESEARCH**

Interviewed fire setters/arsonists throughout the United States as part of a continuing study of serial arsonists begun by the NCAVC in 1990; principal researcher and author of a study of bombers and bombing-related offenders sponsored by the NCAVC and Central Missouri State University; author of a study of bomber organizational characteristics at the NCAVC and Virginia Commonwealth University; engaged in a study of arson filicide.  Doctoral dissertation explored the relationship between serial arson motivation and fire-setting behavior. Current study of serial arson behavior and motives with the Bureau of Alcohol, Tobacco, Firearms, and Explosives, National Center for Explosives Training and Research, and the Federal Bureau of Investigation, National Center for the Analysis of Violent Crime.

**PUBLICATIONS**

Kelm, K. L. (2025). *Structured professional judgment in fire investigation*. Manuscript submitted for publication.

Kelm, K. L. (2023). *Criminal investigative analysis*. Kendall/Hunt.

Kelm, K. L. (2016, June 13-17). *Measures of association for serial arsonist behaviors and motives* [Paper presentation]. International Criminal Investigative Analysis Fellowship Annual Meeting and Training Seminar, FBI Academy, Quantico, VA, United States

Kelm, K. L. (2016, July 8-9), *Examining arson criminal profiling: Serial arson behaviors as predictors of arson motivation* [Poster presentation]. Northcentral University Commencement, Phoenix, AZ, United States.

Kelm, K. L. (2016). *Examining arson criminal profiling: Serial arson behaviors as predictors of arson motivation*. (Publication No.10116208) [Doctoral dissertation, Northcentral University]. ProQuest Dissertations and Theses Global.

Kelm, K. L. (2014, May 12-16). *Criminal profiling epistemology: Knowledge management and divergent paradigms* [Paper presentation]. International Criminal Investigative Analysis Fellowship Annual Meeting and Training Seminar, FBI Academy, Quantico, VA, United States.

Kelm, K. L. (2013, January). *Behavioral investigation of the arsonist: Observing offense behavior part 3 – the crime scene. Fire and Arson Investigator, 63*(3), 12-22.

Kelm, K. L. (2012, July). *Behavioral investigation of the arsonist: Observing offense behavior part 2 – the criminal. Fire and Arson Investigator*, 63(1), 49-53.

Kelm, K. L. (2012, April). *Behavioral investigation of the arsonist: Observing offense behavior part 1 – the crime. Fire and Arson Investigator*, 62(4), 24-30.

Kelm, K. L. (2003). *Classifying bomber characteristics using crime scene indicators: Application of an organizational taxonomy* [Master's thesis, Virginia Commonwealth University]. http://dx.doi.org/10.13140/RG.2.2.30957.72166

Sapp, A., Huff, T., Kelm, K., Tunkel, R. (2001). *Behavior and characteristics of bomb-related offenders*. National Center for the Analysis of Violent Crime. Quantico, VA.

12/03/2025                                                    4

http://dx.doi.org/10.13140/RG.2.1.3808.6246

**PEER REVIEW**

**Grants:**

Office of Justice Programs, Bureau of Justice Assistance, U. S. Department of Justice

Office of Juvenile Justice and Delinquency Prevention, U. S. Department of Justice

Office of Victims of Crime, U.S. Department of Justice

**Publications:**

Fire and Arson Investigator, Journal of the International Association of Arson Investigators

**COURSE DEVELOPMENT**

Created and continued implementation of a semester (3-credit) course on Criminal Investigative Analysis (criminal profiling) for undergraduate students, University of Wisconsin-Milwaukee, CRM JST 291-201.

Created training program components for explosives instruction for the Sistema de Desarrollo Policial (SIDEPOL) of the Policía Federal, Mexico, under contract to the U.S. Department of State, Narcotics Assistance Section, Bilateral Implementation Office as part of the U.S.- Mexico Merida Initiative. Program delivery included classroom and explosives range instruction for graduate-level students matriculating in a master's level explosives course.

Contributed material on the motives of arsonists and assessment of offender behaviors for the *interFire VR – Interactive Virtual Reality Fire Investigation* CD-ROM created to assist fire investigators throughout the United States and Canada.  This cooperative project was sponsored by ATF, the Federal Emergency Management Agency – National Fire Administration, the National Fire Protection Association, and the American Re-Insurance Company. (www.interfire.org)

Created the training program on arson motives and arsonist behavior for all ATF Special Agent basic training classes at the ATF National Academy, Federal Law Enforcement Training Center, Glynco, Georgia; created a similar training program for the ATF National Academy on bomber behavior and motives.

Created section on the motives of bomb threats and bombing incidents in primary and secondary schools and participated in the video production of the CD-ROM *Bomb Threat Response – An Interactive Planning Tool for Schools* developed by the Bureau of Alcohol, Tobacco, and Firearms and the United States Department of Education.

**EXPERT WITNESS**

Testified as an expert witness in the United States District Courts for the Eastern and Western Districts of Wisconsin, the District of Minnesota, the Western District of Kentucky, and the Southern District of Alabama; in the state courts of Wisconsin, Florida, California, Oregon, Massachusetts, and Michigan; testified in the Supreme Court of British Columbia, Canada.

**SEMINARS, CONFERENCES, AND PRESENTATIONS**

2023, "Criminal Investigative Analysis," Georgia Bureau of Investigation, Understudy in-service.

12/03/2025                                        5

2021, Lynch, B. (Host). (2021, September 16). *Rane insights on security with Brian Lynch: Behavioral attributes of attackers* [Audio podcast]. RANE Podcast Series. https://ranenetwork.podbean.com/e/rane-insights-on-security-with-brian-lynch-behavioral-attributes-of-attackers/

2021, "Behavioral Investigation of Arson," North Carolina District Attorney's Association, online webinar.

2016, "Measures of Association for Serial Arsonist Behaviors and Motives," International Criminal Investigative Analysis Fellowship, Quantico, VA.

2014, "Criminal Profiling Epistemology: Knowledge Management and Divergent Paradigms," International Criminal Investigative Analysis Fellowship, Quantico, VA

2013, "Behavioral Investigation of the Arsonist", IAAI, Pigeon Forge, TN

2012, "Arson & Bombing Investigation for Special Agents", Tennessee Bureau of Investigation, Nashville, TN

2012, "Behavioral Investigation of the Arsonist", South Suburban Arson Task Force, Orland Park, IL

2011, "Post-Blast Investigation and Bomber Behavioral Analysis", International Law Enforcement Academy (ILEA), Bangkok, Thailand

2010 (November), "Military Post-Blast Site Exploitation", Department of Defense, Joint Improvised Explosive Device Defeat Organization (JIEDDO), JTF Paladin, Kandahar Air Field, and FOB Lagman, Afghanistan

2010 (May), "Military Post-Blast Site Exploitation", Department of Defense, Joint Improvised Explosive Device Defeat Organization (JIEDDO), JTF Paladin, Kandahar, and Camp Stone, Afghanistan

2009, "Bomber Behavior", ATF National Academy, Federal Law Enforcement Training Center, Glynco, GA

2007, "Post-Blast Investigation and Char. & Traits of Bombing Offenders", ATF State and Local Training, Richmond, KY

2007, "Post-Blast Investigation" and "Characteristics & Traits of Bombing Offenders", ATF State and Local Training, Union City, TN

2006, "Behavior and Characteristics of Serial Arsonists", Bellarmine University Seminar in Criminal Profiling, Louisville, KY

2005, "Post-Blast Investigation" and "Bomber Behavioral Analysis," International Law Enforcement Academy (ILEA), Gabarone, Botswana

2005, "Post-Blast Investigation" and "Characteristics & Traits of Bombing Offenders", ATF State & Local Training, Hopkinsville, KY

2004, "Profiling Violent Offenders, Bombers and Serial Arsonists," Bellarmine University Seminar in Criminal Profiling, Louisville, KY

2004, "Arson Profiling and Offender Behavior," ATF Advanced Arson Seminar, Jefferson City, MO

2004, "Arson Profiling and Offender Behavior," IAAI – Ohio Arson Conference, Columbus, OH

2004, "Arson Profiling and Offender Behavior," "Bomber Behavioral Analysis", National Center for the Analysis of Violent Crime, Criminal Investigative Analysis Understudy Seminar, FBI Academy, Quantico, VA

2004, "Profiling Violent Offenders" and "Bombers and Serial Arsonists", Master's seminar in Forensic Psychology, Marymount University, Arlington, VA

2003, "Advanced Arson Investigation for the Insurance Industry, ATF National Academy, Federal Law Enforcement Training Center, Glynco, GA

2003, "Bomber Behavioral Analysis", Canadian Police College, RCMP, Ottawa, Ontario, Canada

2003, "Arson Profiling," IAAI Texas State Arson Seminar, Austin, TX

2003, "School Violence", "Juveniles & Explosives", U.S. Attorney – District of Idaho Cease Fire Conference, Sun Valley, ID

2003, "Arson Profiling & Offender Behavior," University of New Haven, New Haven, CT

2003, "Arson Filicide", "Statement Analysis", IAAI, Reno, NV

2002, "Bomber Behavioral Analysis", International Association of Bomb Technicians and Investigators, Boise, ID

2002, "Bomber Behavioral Analysis, International Association of Bomb Technicians and Investigators, Indianapolis, IN

2001, "Profiling Concepts" and "Characteristics and Traits of Bombing Offenders", National College of District Attorneys, San Diego, CA

2001, "Bomber Behavioral Analysis", US Postal Inspection Service Bomb Technician Certification, Virginia Beach, VA

2001, "Arson Offender Behavior", 12th Annual Violent Crime Seminar, FBI & University of Michigan, Ann Arbor, MI

2001, "Bombing Offender Behavior", American Society for Industrial Security, University of South Florida, Tampa, FL

2000, "Behavior and Characteristics of Bombing Offenders", 8th Annual Investigation for Identification Educational Conference, Pensacola, FL

2000, "Serial Bomber Profiling", World EOD Foundation 14th International Conference, Arlington, VA

2000, "Arson Behavioral Linkage", International Symposium on Serial Arson Linkage Systems, National Research Council of Canada, Ottawa, Ontario, Canada

2000, "Arson Criminal Investigative Analysis", U.S. Army Criminal Investigation Command, Ft. Belvoir, VA

1999, "Church Arson", Tennessee Governor's Church Arson Conference, Nashville, TN

1999, "Juvenile Bombers", U.S. Attorney - Eastern District of Ohio, School Violence Seminar, Zanesville, OH

1999, "Behavior and Characteristics of Bombing Offenders", World EOD Foundation 13th International Conference, London, England, UK

1999, "Bomber Typologies", International Conference on Violent Crime, RCMP, Barrie, Ontario, Canada

1999, "Arson Profiling", Canadian Association of Fire Investigators, Ottawa, Canada

1999, "Arson Profiling," Oklahoma State University Fire Protection Symposium, Stillwater, OK

1999, "Serial Arson & Bombings", 196th FBI National Academy, Quantico, VA

1999, "Arson & Bombing Crime Scenes", 197th FBI National Academy, Quantico, VA

1999, "Fire Death Investigation", FBI Arson Crime Scene Investigation Seminar, Quantico, VA

1997, "Criminal Investigative Analysis" and "IED Practical Exercises", United States Attorney Law Enforcement Conference, Sun Valley, ID; Post-Blast Investigation for State and Local Officials

1998, "National Overview of Church Arsons" and "Arson Criminal Investigative Analysis", Oklahoma Church Arson Conference, University of Oklahoma, Norman, OK

1998, "Criminal Investigative Analysis Understudy Training - Arson and Bombing Analysis" Australian Bureau of Criminal Intelligence, Canberra, Australia

1998, "Criminal Investigative Analysis", Complex Investigations Seminar for Special Agents, ATF National Academy, Federal Law Enforcement Training Center, Glynco, GA

1998, "Criminal Investigative Analysis", National Center for State, Local and International Law Enforcement Training, FLETC, Glynco, GA; Arson for Profit Investigation Seminar for State and Local Officers,

1998, "Bombers and Arsonists", FBI National Academy, Federal Bureau of Investigation, Quantico, VA; Violence in America Seminar

1998, "Criminal Investigative Analysis Understudy Training - Arson and Bombing Analysis", Australian Bureau of Criminal Intelligence, Canberra, Australia; International Criminal Investigative Analysis Fellowship

1998, "Arson Criminal Investigative Analysis", ATF National Academy, FLETC, Glynco, GA; Arson Task Forces

1998, "Arson Profiling - Offender Characteristics, Analysis Techniques, Investigative Strategies", IAAI Maryland, Rockville, MD

1998, "National Overview of Church Arsons" and "Arson Criminal Investigative Analysis", Oklahoma Church Arson Conference, University of Oklahoma, Norman, OK

1998, "Criminal Investigative Analysis - Investigative Strategies", ATF National Response Team, NRT Training, Reno, NV

1998, "Criminal Investigative Analysis", National Center for State, Local and International Law Enforcement Training, FLETC, Glynco, GA; Arson for Profit Investigation Seminar for State and Local Officers

1997, "Criminal Investigative Analysis and Profiling the Arsonist", IAAI Seminar, Eureka Springs, AK

1997, "Criminal Profiling - Arson and Bombing Risks to Hotel Properties", Hilton Hotels Safety and Security Conference, Phoenix, AZ;

1995, "Explosives and Booby Traps", Milwaukee County Sheriff, SWAT Training Seminar, Milwaukee, WI

1995, "Explosives and the Oklahoma City Bombing", International Association of Women Police, 33rd IAWP Conference, Milwaukee, WI

1995, "Criminal Investigative Analysis", Advanced Arson & Explosives Investigations for Special Agents ATF National Academy, FLETC, Glynco, GA;

1994, "Analytical Investigative Techniques", Death Investigation Seminar, WI Div. Crim. Invest., Green Lake, WI

1994, "Firearms and Explosives", Trooper In-Service, Wisconsin State Patrol Academy, Sparta, WI

1993, "Analytical Investigative Techniques", Death Investigation Seminar, WI Div. Crim. Invest., Green Lake, WI

1993, "Accidental Fires", Winnebago County Fire Investigation Unit, Winneconne, WI

1993, "Explosives & ATF Jurisdiction," WI DOJ, Basic Criminal Investigation School, Madison, WI

1993, "Accidental & Incendiary Fire Causes," Manitowoc Fire Investigation Task Force, Manitowoc, WI

1993, "Practical Fire Investigation", Waukesha County Technical College, Waukesha, WI

1993, "Accidental Fires," and "Crime Analysis Charting", Arson Investigation for Law Enforcement Officers Milwaukee Area Technical College, Milwaukee, WI

1993, "Practical Fire Investigation," Milwaukee Area Technical College, Oak Creek, WI

1992, "Origin & Cause Determination," IAAI, Arson Seminar, Richland Center, WI

1992, "Accidental Fire Causes," Washington County Arson Task Force, Hartford, WI

1992, "Accidental Fire Causes," Calumet County Arson Task Force, Hilbert, WI

1992, "Basic Explosives for Firefighters", LaCrosse Fire Department, LaCrosse, WI

1992, "Explosive Scene Investigation", Monroe Fire School, Monroe, WI

1992, "Analytical Investigative Techniques", LECC, District of North Dakota, Bismarck, ND

1992, "Explosive Scene Investigation", Wisconsin State Patrol Academy, Sparta, WI

1991, "Arson Auditing", Fox Valley Tech. Inst., Appleton, WI

1991, 1991, "Legal Aspects of the Fire Scene", Monroe Fire School, Monroe, WI

1990, "Arson for Profit Investigation", Fox Valley Tech. Inst., Appleton, WI

1990, "Arson for Profit Investigation", Monroe Fire School, Monroe, WI

1989, "Arson for Profit Investigation", Mid State Tech. College, Wisconsin Rapids, WI


**NOTE: References upon request. This CV is accurate as of the date it was provided for your use.  This does not preclude the possibility of additional information having been added since that time.  It has been provided for the limited purpose specified and is not to be further reproduced or disseminated without the express written consent of Kevin L. Kelm, Ph.D.**



**Arson & Bombing Behavioral Analysis, LLC**
**18200 30th Avenue**
**St. Charles, IA 50240**
**(251) 233-3947**

January 3, 2026

Bilal A. Essayli, Esq.
First Assistant U.S. Attorney
Central District of California
312 N. Spring St. Suite 1200
Los Angeles, CA 90012

**Re:    United States of America v. Jonathan Rinderknecht**
**United States District Court, Central District of California**
**Case Number: 2:25-cr-00833-AH**

Dear Mr. Essayli:

At your request, I reviewed the material provided related to the above-mentioned matter. I offer my observations about the offense as well as an opinion as to the relevant offense behavior and probable motivation for the offense. I reserve the right to modify or supplement my opinions at a future date should I be asked to consider additional information.

This analysis is based on a review of the materials submitted. My conclusions and opinions are based on knowledge drawn from my personal experience, education, training, and research. I hold these opinions within a reasonable degree of professional certainty. My opinion is independent of financial agreements, legal outcomes, settlements, or contracts between the Government and other parties. As indicated, I was retained to review the government's theory of the offense to provide an opinion about the relevant offense behavior and the probable motivation for the fire.

**Summary of the Case**

On January 1, 2025, at approximately 00:12 hours, a fire was reported to the east of The Enclave at the Summit within the Pacific Palisades neighborhood. An additional 9-1-1 call was made by Dylan Ferguson on January 1, 2025, at approximately 00:16 hours. The fire, burning 8-10 acres, originated in the Topanga State Park in the Santa Monica Mountains near the Hidden Buddha feature. It is known as the ***Lachman Fire***.

The defendant, Johathan Rinderknecht, attempted to contact the 9-1-1 operator numerous times without success until he connected at approximately 00:17 hours. Forensic examination of cell phone data showed Rinderknecht first called 9-1-1 at 00:12:31 hours from a location near the *Hidden Buddha* feature in the Topanga State Park. He reportedly made 13 more calls, starting at 00:26. Rinderknecht told investigators he called 9-1-1 five more times after 00:26. Rinderknecht informed investigators that he used to live in the area where the Lachman Fire occurred, but the house was destroyed by the fire.

USAO_00051317

U. S. v. Rinderknecht, 2:25-cr-0083-AH                                                    2

Investigators determined that Rinderknecht was present at the trailhead near the Hidden Buddha feature when the fire began, arriving around 23:38 on December 31, 2024. Surveillance showed him walking up the hill and taking two videos at 23:47, with no signs of fire or fireworks. He later reported seeing a glow and attempted to call 9-1-1 multiple times starting at 00:12, with the fire rapidly growing soon after.

Timeline analysis matched his cell phone data with camera recordings, showing the fire became visible about 25 minutes after his arrival. Cameras did not detect smoke or fire until just before the flash appeared. Although Rinderknecht was within 30 feet, he said he did not see or smell the fire before it quickly spread.

Data contradicted his claim that he saw the fire only while descending the hill, suggesting the blaze was sudden rather than slow-burning. His claimed smoking location was outside the area where the fire started, and he delayed calling 9-1-1 until after the fire was visible on distant cameras. The evidence indicated a quick transition from no fire to a significant blaze, likely fueled by dense vegetation. Rinderknecht admitted owning a lighter but did not specify its type; investigators later found a grill lighter in his vehicle.

The origin and cause investigation determined that the Lachman Fire started on the south side of the hill near the Hidden Buddha feature. The fire was caused by an open flame, such as a lighter, igniting vegetation or other combustibles. The investigation determined that the defendant was responsible for the Lachman fire.

On January 7, 2025, at about 10:30 am, the **Palisades Fire** was reported south of the Lachman Fire in the same area.

Investigators concluded that the Palisades Fire originated from a deeply seated holdover fire in dense vegetation about 20 feet south of the handline along the south containment line of the Lachman Fire. The investigation determined the Lachman Fire was an intentionally set fire. If the incendiary Lachman Fire near the Hidden Buddha on January 1, 2025, had not happened, the Palisades Fire would not have occurred. The defendant was indicted for both fires.

### Methods to Describe Deliberate Firesetters

Generally, the two methods used to describe firesetters[1] are classification and typologies.

**Classification**. Classifications use similarities among items to organize distinct groups, manage vast amounts of data efficiently, and facilitate better understanding and decision-making. In the case of arson, classifications are most commonly used for assessment and treatment of pathological firesetters. In academic research and clinical use, classification helps in theory development. Classification:

- Breaks down large, complex subjects into smaller, manageable groups, making it easier to study and understand their characteristics.

---

[1] In this report, the terms firesetter and arsonist are used interchangeably assuming the behavior is illegal.

USAO_00051318

U. S. v. Rinderknecht, 2:25-cr-0083-AH                                            3

- Helps establish and visualize the relationships, including evolutionary connections (phylogeny), between different items or organisms.

- Provides a universal system for naming and identifying specific items, which helps avoid confusion caused by different local or common names and allows for clear global scientific communication.

- By knowing which group an item belongs to, scientists and researchers can make informed predictions about characteristics (statistical probability).

In the context of deliberate firesetting, the focus of classification is etiology (e.g. interactive psychological variables) and treatment required to prevent recidivism. This is primarily the purview of mental health professionals (psychologists and psychiatrists). The most current and widely used arson classification system is the Multi-Trajectory Theory of Adult Firesetting (M-TTAF), Gannon, et al. (2012)[2]. Although this theoretical model demonstrates utility as a classification system, it has not been sufficiently tested for reliability and validity as a clinical diagnostic tool.

**Typologies.** Typologies are used to describe differences between items that define distinct types to organize complexity, reveal patterns, aid in analysis, and create frameworks for understanding in fields like social science. It simplifies complex data, identifies similarities and differences, and serves as a foundation for further research and comparison across different areas. In social sciences and research, typologies are not theories but help in theory development. Typologies:

- Help researchers define and refine abstract concepts by creating clear categories.

- Organize data and cases into manageable types for analysis and comparison.

- Reveal underlying structures (patterns) or dimensions in complex phenomena.

A criticism of arson typologies is that they are based upon discredited "trait" theory, but such criticism is unfounded. Trait theory suggests that people with certain characteristics commit crimes (such as Lambrusco's criminal atavism). Conversely, arson typologies describe commonalities among people who ARE criminals.

Typologies help fire investigators and legal professionals interpret the reasons behind firesetting, clarify the intent, and make sense of offender behavior that might otherwise appear unreasonable or hard to comprehend. Therefore, a motivational typology will be used for this assessment. Motive is defined as an inner drive or impulse that is the cause, reason, or incentive that induces or prompts a specific behavior.[3]

---

[2] Gannon, T. A., Ó Ciardha, C., Doley, R. M., & Alleyne, E. (2012). The multi-trajectory theory of adult firesetting (M-TTAF). Aggression and Violent Behavior, 17(2), 107–121.
[3] Rider, A. O. (1980). The firesetter: A psychological profile (Part 1). *FBI Law Enforcement Bulletin*, *49*(6), 6–13.

USAO_00051319

U. S. v. Rinderknecht, 2:25-cr-0083-AH                                                      4

Motivational typologies of arsonists were influenced by the early studies of practitioners Lewis & Yarnell (1951)[4] and Inciardi (1970)[5]. Lewis and Yarnell, studying arsonists confined to psychiatric institutions, developed a comprehensive typology using four main motives (pyromania, psychotic, revenge/jealousy, and burglary) based upon descriptive statistics and case studies. Using descriptive statistics as well, Inciardi (1970) described six motives for arson: revenge, excitement (pyromania), institutionalized, insurance claim, vandalism, and crime concealment.

Although several typologies have been developed to describe arson[6], the most widely used is the Federal Bureau of Investigation (FBI) (Icove & Estepp, 1987[7]; Sapp et al., 1995[8]; Douglas et al., 2013[9]). I will use the FBI model for this analysis because it is a rationally developed construct derived from examination of arson-related behavior that is easily understood and provides a common framework of grouping variables where arson offenses can be assigned to motivational types.[10] Use of the arson motivation typology comes with this caveat. The arson motivation typology is a model used to describe firesetter behavior and the reasons for arson. Motives do not exist in a tangible sense—they are constructs that describe complex psychological factors to interpret or "make sense" of the offender's conduct. The detailed reason why someone sets a fire is generally unknown until they tell someone, but typologies describe similarities between those firesetting offenders who describe the reason(s) for their conduct, the characteristics of the offense, and descriptions of their behavior.

### Power, Frustration, and Anger

Arsonists frequently describe their firesetting as a strategy for asserting power, using fire as a means to influence or control aspects of their stressful environment. For example, in cases where arson is employed as a weapon, such as in gang-related activities, the act demonstrates the arsonist's power to dominate or intimidate others. In other situations, arsonists may seek to obtain power or regain power they feel they have lost. In addition to power dynamics, frustration is another significant factor influencing firesetting behavior. A common theme among discussions of deliberate firesetting is the experience of frustration caused by adverse life events, such as the loss of employment, troubled interpersonal relationships, social isolation, rejection, or a debilitating injury or disability. As noted by Canter and Fritzon (2010), "All writers on arson seem to agree that arsonists have limited capabilities

---

[4] Lewis N. D. C., Yarnell H. (1951) Pathological Firesetting (Pyromania). New York, Nervous and Mental Disease Monographs No. 82.

[5] Inciardi J. A. (1970) The adult firesetter — a typology. Criminology 8, 145–55.

[6] Canter, D., & Fritzon, K. (1998). Differentiating arsonists: A model of firesetting actions and characteristics. *Legal and Criminological Psychology*, *3*(1), 73–96. doi:10.1111/j.2044-8333.1998.tb00352.x; Kocsis, R. N., & Cooksey, R. W. (2002). Criminal psychological profiling of serial arson crimes. International Journal of Offender Therapy and Comparative Criminology, 46(6), 631–656. doi:10.1177/0306624X02238159

[7] Icove, D. J., & Estepp, M. H. (1987). Motive-based offender profiles of arson and fire related crimes. FBI Law Enforcement Bulletin, 56(4), 17-23. Retrieved from https://www.ncjrs.gov/pdffiles1/Digitization/105100NCJRS.pdf

[8] Sapp, A. D., Huff, T. G., Gary, G. P., & Icove, D. J. (1995). A motive-based offender analysis of serial arsonists [Research paper]. Quantico, VA: U. S. Department of Justice, Federal Bureau of Investigation.

[9] Douglas, J. E., Burgess, A. W., Burgess, A. G., & Ressler, R. (2013). Crime classification manual: A standard system for investigating and classifying violent crimes (3rd ed.). Hoboken, NJ: Wiley.

[10] The FBI typology is used by fire investigators: National Fire Protection Association [NFPA]. (2024). Guide for fire & explosion investigation 2024 ed., (NFPA 921). Quincy, MA.

USAO_00051320

U. S. v. Rinderknecht, 2:25-cr-0083-AH                                                    5

for acting when frustrated or to express other emotions" (p. 74)[11]. Firesetters often struggle to cope with these stressors, leading to persistent feelings of frustration and a sense of helplessness over their inability to change or achieve certain goals. This frustration may escalate into anger, particularly when the individual perceives the source of their distress as unjustified. Consequently, firesetting becomes a way for some arsonists to release pent-up frustration and anger in an attempt to regain a sense of control or emotional relief. Power, frustration, and anger are themes that cross all motivations for firesetting. The arsonist who craves excitement is frustrated by a lack of stimulation in their environment and exercises power to control their environment with fire, providing the desired activity to relieve their stress.

### Arson Motives

Various typologies use motivational schemes with various category titles, but they generally fall within the scope of the FBI model with the following motives: vandalism, revenge, excitement, profit, crime concealment, and extremism. Three motives have the following subcategories:

**Revenge** – fire set as a form of retaliation for a real or perceived wrong that may have occurred months or years before the firesetting. Subcategories include:

- Personal retaliation – directed at individuals for personal revenge.
- Societal retaliation – indiscriminate, targets vary based upon desire and opportunity.
- Institutional retaliation – organizations, churches, schools, government
- Group retaliation – ethnicity, race, affiliation.

**Excitement** – fire set for stimulation, feelings of power and control being the cause of the chaos. Subcategories include:

- Thrills – impulsive risk-taking, watching emergency response, and community impact.
- Attention – being treated as a "victim."
- Recognition (hero) – feelings of importance, finding/reporting/fighting fire.
- Sexual perversion – extremely rare, questionable as a motive but ubiquitous because of early writing (Freud, Lewis & Yarnell, Inciardi).

The other motives are:

**Vandalism** - willful and malicious mischief, often in groups directed by youthful peer/group pressure. Targets generally have some relationship to the offenders, e.g. schools, playgrounds, hangout areas.

**Profit** – fraud, liquidate property, dissolve business, conceal loss, eliminate competition.

**Crime Concealment** – secondary crime activity to conceal a primary offense, such as murder, suicide, burglary/theft, larceny, or destroy incriminating records.

---

[11] Canter, D., & Fritzon, K. (1998). Differentiating arsonists: A model of firesetting actions and characteristics. Legal and Criminological Psychology, 3(1), 73–96. doi:10.1111/j.2044-8333.1998.tb00352.x

USAO_00051321

U. S. v. Rinderknecht, 2:25-cr-0083-AH                                              6

**Extremism** – terrorism, discrimination, riot/civil disturbance, social cause.

**Mixed Motives -** motivation is generally inferred from the firesetters' antecedent behavior, crime scene behavior, and post-offense behavior. As previously noted, motives are a construct, and they may be combinations of several motives that overlap and satisfy personal desires. Although firesetters generally have a primary motive, other motives may be present as well as part of the power dynamic.

### Motivation as Instrumental or Expressive Behavior

A useful method of categorizing motives is to describe them as instrumental or expressive. Instrumental and expressive motivations are two of the most useful high-level distinctions for understanding why people engage in harmful or illegal behavior, including firesetting. They capture what the person is trying to achieve and what emotional state is driving the behavior.

**Instrumental motives** tend to be rational. They are goal-directed, purposeful, and oriented toward achieving an external outcome. Emotions may be present, but they are not the primary driver. The firesetting often involves planning, even if minimal. Examples include

*Criminal enterprise* – insurance fraud (profit), organized crime (tactical advantage), intimidation (terrorism).

*Crime concealment* - destroying evidence, altering the crime scene.

*Extremism* – obtaining political/social goals and objectives.

Although maladaptive, instrumental motivation is somewhat rational as a means to an end, used to obtain something or solve a perceived problem. Instrumental fires are calculated, and often show clear benefit to the offender, with more planning and preparation resulting in a fire that "makes sense" when viewed through the lens of the offender's goals.

**Expressive motives** are driven by emotion. They are reactive, impulsive, opportunistic, and frequently repetitive (serial). Fire does not have a practical goal as it arises from emotional arousal, not strategic thinking. The goal is to express, release, or regulate feelings. It is often impulsive or poorly planned. The fire itself is the emotional outlet. Common drivers of the firesetting include anger or rage, fear or panic, loneliness, depression, emotional distress, the need for excitement or thrill-seeking, a desire for attention or recognition, or a need for stimulation or escape from boredom. Expressive motives map closely with the FBI arson typology:

*Excitement* – fire set to experience arousal, stimulation, or a sense of power.

*Revenge* **-** fire is primarily a vehicle for venting rage or emotional pain rather than achieving a strategic outcome.

*Vandalism* - fire set impulsively, often in peer contexts, as a form of emotional expression or acting out.

Although expressive and instrumental motives are conceptually distinct, many real-world cases involve mixed motives as noted previously. For example, revenge might be combined with financial gain to

USAO_00051322

Case 2:25-cr-00833-AH    Document 111-3    Filed 04/22/26    Page 17 of 21    Page ID
#:4104
U. S. v. Rinderknecht, 2:25-cr-0083-AH                                                    7

accomplish complementary objectives. The offender's antecedent, offense, and post-offense behavior, the target selection (victimology), and offense characteristics help distinguish mixed motives.

## Analysis and Opinion

My opinion is based on my education, training, and experience in reviewing the case material that includes reports of investigation from the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), the Los Angeles Fire Department (LAFD), and the Los Angeles Police Department (LAPD). I evaluated the details of the case by applying the FBI Arson Motivational Typology that was previously discussed, in order to form my opinion on what motivated the Lachman fire on January 1, 2025—assuming that Johathan Rinderknecht, the defendant named in the indictment, was responsible for setting it.

### Antecedent Stressors

The investigation suggests a long list of adverse events in the defendant's life leading up to the events of January 1, 2025. Individually, these stressors were capable of causing Mr. Rinderknecht frustration and anger, which he freely expressed in different ways that led to the Lachman fire. These stressors included problems with his relationships. The defendant was dissatisfied with his employment and a change in his lifestyle that affected his income and living arrangements. He appeared to be preoccupied with societal factors, such as the presidential election of 2024 and the subsequent presidency of Donald Trump, the economic disparity between the rich and the lower classes, and environmental issues such as global warming, none of which he had the ability to directly influence or remedy to his satisfaction. Mr. Rinderknecht indicated dissatisfaction with his life, especially his lack of success and achievement when compared with his siblings.

Mr. Rinderknecht's responses to these life stressors were maladaptive and ineffective. He was prone to venting his frustrations through rants and tirades in texts, messages, multimedia creations, entertainment, and internet queries. His documented behavior indicates increasing frustration and anger, reflecting his inability to change the things that upset him—generally being powerless. There are many indicators of anger, frustration, and powerlessness in this case. On August 22, 2024, the defendant asked the question of an artificial intelligence (AI) chatbot, "Why am I so angry all the time?"

**Relationships:**

*Interpersonal conflict:* The defendant, Jonathan Rinderknecht, has longstanding, strained relationships with parents, siblings, and romantic partners; family reports describe distance, deception, and recurring conflict.

*Emotional themes in AI prompts:* ChatGPT prompts recovered from his phone show repeated feelings of abandonment, anger, rejection, loneliness, and statements suggesting suicidal ideation and severe distress.

*Relationship patterns:* Multiple ex-partners describe volatile, aggressive, and "toxic" relationships; allegations include physical abuse, vandalism, and controlling or erratic behavior.

*Social isolation and instability:* Accounts from coworkers, neighbors, and family portray him as a loner with few close friends and inconsistent contact with relatives.

USAO_00051323

*Behavioral indicators:* Evidence of impulsive, hostile, and intrusive communications (rambling calls, repeated texts), use of AI to draft emotionally charged messages, and past incidents of vandalism or domestic disturbance.

**Lifestyle and Finances.**

*Lifestyle and social isolation:* Witnesses report Rinderknecht had few outside interests, no close friends, and lived day-to-day, relying on partners' social circles.

*Work and financial stress:* He worked frequently (often as a driver), was preoccupied with paying bills, and expressed frustration about unstable income.

*Neighbor conflict and safety concerns:* Multiple accounts describe a problematic neighbor who entered his apartment and allegedly used meth there; Rinderknecht was upset and complained police would not remove the person.

*Emotional state and coping:* ChatGPT prompts show he wanted to "do the job, get fucked up, and not give a fuck," indicating frustration, desire to escape, and difficulty maintaining stability.

*Behavior on December 31, 2024:* Uber passengers described him as agitated, ranting about work and pay, creating awkward or tense interactions.

**Social Issues**

*Political and social focus:* Jonathan Rinderknecht expressed intense, sometimes obsessive interest in social issues—environment, income inequality, politics—and discussed conspiracy-minded views about government and institutions.

*Emotional intensity and paranoia:* Witnesses described his political talk as erratic or manic, mixing references to politics, religion, and conspiracies (e.g., Illuminati, banking collapse), producing heightened anxiety or paranoia.

*Consistent observer reports:* Family, ex-roommate, and neighbors all noted increasing anxiety about politics and the banking system; some described strong antipathy toward the government and MAGA.

*Behavioral presentation:* His political preoccupations were perceived as extreme by those around him and contributed to others' concerns about his mental state and social functioning.

**Frustration, Anger, Power**

*Interpersonal trust and dependence:* Former roommate Peter Ferguson did not trust Rinderknecht but would rely on him when necessary.

*Emotional volatility and mood swings:* ChatGPT prompts show rapid shifts between grandiosity ("conquer the world") and deep depression, loneliness, and statements suggesting potential for harm or self-destructive thoughts.

USAO_00051324

U. S. v. Rinderknecht, 2:25-cr-0083-AH                                                          9

> *Isolation and rumination:* Repeated themes of loneliness, feeling disconnected, and the world feeling "heavy;" he reports limited social activity beyond work and solitary pursuits.

> *Anger and threat language:* Several prompts express intense anger and contain veiled warnings about "doing something bad," linking his rage to others' behavior.

> *Substance use and coping:* He describes using weed and alcohol to disconnect or numb emotional pain and asks about painkillers' emotional effects.

> *Identity and paranoia:* Self-described intellectual superiority mixed with self-criticism; distrust of others and anxiety about systems and people.

> *Observed instability:* An Uber colleague reported Rinderknecht as "flustered," ranting, and mentally unstable; frequent calls complaining about neighbors and other stressors.

> *Aggressive and controlling behaviors:* Partner reports and accounts include vandalism, physical aggression, controlling sexual behavior, self-hitting, dissociation, and a desire for power/status.

> *Sexualized, demeaning, and violent content:* He prompted AI to generate grotesque, demeaning imagery of a woman, indicating hostile objectification. Rinderknecht prompted ChatGPT to create art depicting a revolution to overthrow corporate and financial power, framing corporations (pharma, tech, food, oil) as oppressors of humanity and nature. He requested a multi-panel/dichotomous painting: burning forest and environmental destruction on the left; a massive crowd of impoverished people in the center trying to pass a gate marked with a dollar sign; the wealthy elite behind a wall on the right enjoying opulence and advanced technology while watching the destruction. He repeatedly clarified spatial layout (forest on far left, vertical wall/gate on far right, crowd in middle trying to get through) and demanded the scene show the rich protected from climate collapse while flames link their actions to the destruction. When the generated images didn't match his directions, his prompts became angry and insulting, using profanity and name-calling while insisting on precise vertical composition and asking for multiple templates/images reflecting his growing frustration with the project. He asked for ten template images and iterative revisions, emphasizing the emotional impact and stark contrast between the two sides.

The collection of antecedent behaviors documented in this investigation strongly supports the notion that the stressors in the defendant's life and his response to them are entirely consistent with the research related to arson motivation.

**Expressive Motivation – Revenge and Excitement (Mixed)**

The location and target of the Lachman fire are not consistent with instrumental motives. There is no evidence of a clear, goal-directed benefit to the defendant (no obvious financial, tactical, or concealment objective). Factors that support this conclusion are the absence of purposeful target selection for gain; scene features and offender behavior more consistent with opportunism or emotional expression (minimal planning, no effective concealment, symbolic or attention-seeking elements); no documented preparatory steps that would indicate a calculated, instrumental act.

USAO_00051325

U. S. v. Rinderknecht, 2:25-cr-0083-AH                                                    10

The available scene evidence and offender-related information point toward an expressive motive—an act driven by emotion, symbolism, or the need to regulate affect—rather than a calculated, goal-directed (instrumental) act. The time, location, and fuel load are inconsistent with vandalism as a motive.

The two main motives are *revenge*—using fire to express anger or emotional pain*,* and *excitement*—setting fires for arousal, stimulation, or power. Both motives likely played a role in the Lachman fire, but revenge appears to be the primary motive. Key indicators pointing to revenge-focused motivation are:

- Grievance and anger history—documented chronic frustration, perceived powerlessness, and interpersonal conflicts that provide a plausible emotional trigger. The fact that the defendant found himself alone, driving happy partygoers on New Year's Eve, likely exacerbated his anger and his need to demonstrate power in his life.

- Symbolic target selection—the target's meaning to the offender (real or perceived grievance) rather than instrumental utility. The defendant is very familiar with the area, and he has indicated that it has some aesthetic and emotional meaning to him.

- Affective language and threats—prior communications expressing rage, humiliation, or desire to be noticed support an emotion-driven function.

- Simple modus operandi (MO)—lack of sophisticated planning, concealment, or preparatory steps consistent with goal-directed (instrumental) arson. The location was very accessible to Mr. Rinderknecht. There is little to no evidence of preparatory steps, sophisticated concealment, or tools consistent with a calculated operation. The act was impulsive, using direct hand-held ignition as the cause of the fire.

The defendant's revenge was focused on *society*: the Lachman fire was an indiscriminate act driven by opportunity and a desire to make a public statement rather than to obtain a material benefit. Unlike instrumental arson, which seeks a practical payoff, this fire functioned as symbolic communication—an outlet for the defendant's anger and frustration—through which he derived satisfaction by expiating those emotions and asserting control over aspects of his life he felt were otherwise uncontrollable.

The defendant's post-offense behavior at or near the scene suggests lingering, watching, or returning to observe the fire. This supports an affective payoff related to a demonstration of power and meets the need for the secondary motive, *excitement*. The rapid-fire involvement was likely unexpected; many firesetters are surprised by the size and extension of what they assume will be a relatively small fire. They tend to forget that, once alight, fire is not easily controlled. The unexpected large fire caused the defendant to panic and try to undo the firesetting, as evidenced by his repeated frantic attempts to contact the fire department and assist in fire suppression. Lingering at the scene or helping with suppression are clear expressive signs; they offer instant emotional rewards like arousal, control, and attention, and may show dominance over victims or responders.

### Conclusion

The defendant, Jonathan Rinderknecht, set the Lachman fire on January 1, 2025, as an expression of societal revenge as the primary driver, with excitement as a secondary factor: the

U. S. v. Rinderknecht, 2:25-cr-0083-AH                                                    11

defendant's documented grievance, anger, and perceived powerlessness provide a plausible emotional trigger; the target held symbolic or aesthetic meaning rather than instrumental value; prior affective communications support an emotion-driven function; and the simple, hand-held ignition method indicates impulsivity. The defendant's post-offense behavior—lingering, returning, and attempting to assist suppression after panic—further supports an affective payoff (arousal, control, attention) consistent with expressive, revenge-focused arson. I hold these opinions within a reasonable degree of professional certainty.

Thank you for sending this case for review. If you have any questions or need further explanation, please feel free to reach out to me. I am available to assist as needed.


Respectfully,

Kevin L. Kelm, Ph.D.
Arson and Bombing Behavioral Analysis, LLC

USAO_00051327