TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Assistant United States Attorney
Chief Assistant United States Attorney &
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental Crimes & Consumer Protection Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
DANBEE C. KIM (Cal. Bar No. 350014)
Assistant United States Attorneys
Environmental Crimes & Consumer Protection Section
1400 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-3359/8644/6530
Email: mark.a.williams@usdoj.gov
matthew.o'brien@usdoj.gov
danbee.kim2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN RINDERKNECHT,<br>aka "Jonathan Rinder,"<br>aka "Jon Rinder,"<br><br>Defendant. | No. CR 25-833(A)-AH<br><br><u>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE NO. 3 RE: THE JANUARY 24, 2025 INTERVIEW</u><br><br>Hearing Date: October 22, 2026<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom of the Hon. Anne Hwang |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Mark A. Williams, Matthew W. O'Brien, and Danbee C. Kim, hereby files this opposition to defendant JONATHAN RINDERKNECHT's Motion <u>in Limine</u> No. 3 Re: the January 24, 2025 Interview: Designation, Rule 106 Completion, and No Witness Interpretation (Dkt. No. 281).

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 9, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Assistant United States Attorney
Chief Assistant United States Attorney &
Chief, Criminal Division

/s/
MARK A. WILLIAMS
MATTHEW W. O'BRIEN
DANBEE C. KIM
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## Table of Contents


I. INTRODUCTION ........ 1

II. FACTUAL CLARIFICATIONS ........ 1

- A. Defendant Already Possesses the Clips, Full Audio, and Transcripts ........ 1
- B. The Government's Exhibit 880 Includes the Relevant Question ........ 1
- C. Exhibits 886 and 887 Provide the Context for Exhibit 888 ........ 2
- D. Explanation or Paraphrasing by Special Agent Beals Was in Response to Defense Questioning ........ 3

III. THE MOTION SHOULD BE DENIED ........ 4

- A. The Defense's Proposed Pretrial Designation Protocol Is Unwarranted ........ 4
- B. Rule 106 Does Not Permit the Defense to Admit Self-Serving Hearsay Simply Because the Hearsay Appears Near Another Statement ........ 4
- C. The Defense's Request to Bar Agents From Testifying About Their Understanding of Interview Statements Has No Basis in Rule 701 or Ninth Circuit Precedent ........ 7
- D. The Defense's Request for a Ruling That Rule 106 Completeness Does Not Open the Door Is Premature and Internally Inconsistent ........ 9

IV. CONCLUSION ........ 9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government opposes defendant JONATHAN RINDERKNECHT's ("defendant") Motion in Limine No. 3 Re: the January 24, 2025 Interview: Designation, Rule 106 Completion, and No Witness Interpretation (Dkt. No. 281).

The defense seeks sweeping relief unsupported by the law or facts. Defendant asks the Court to (1) impose an unprecedented and rigid clip-designation procedure, (2) require wholesale admission of material unrelated to the government's clips (circumventing hearsay rules), and (3) prospectively bar interviewing agents from explaining what they understood during and in the context of the interview. The defense also objects to unspecified clips for failing to include context while also objecting to the very same context as unduly prejudicial.

The government's planned exhibits come from audio clips already produced to the defense, along with the complete certified transcripts. The defense cannot use Rule 106 to force admission of broad swaths of an eight-and-a-half hour interview or to prevent the jury from hearing ordinary, perception-based testimony from interviewing agents. The Motion should be denied.

## II. FACTUAL CLARIFICATIONS

### A. Defendant Already Possesses the Clips, Full Audio, and Transcripts

All audio clips the government intends to use at trial at this time have been produced. All but three clips are clips used during the first trial and were produced months ago. Full audio of defendant's interview was produced nearly a year ago, and the full transcripts of the morning and afternoon sessions were produced in May 2026 and for a second time in September 2026 in response to the defense's request.

### B. The Government's Exhibit 880 Includes the Relevant Question

The defense points to Special Agent Beals's question "do you think that [punishing people] could be a catalyst" to argue that the defendant's statement in one of the government's clips during the first trial did not contain the question it was in

response to. (Def. Motion at 3:12-18.) That is incorrect. Defendant responded to that question by agreeing that the world is full of evil people who do not care about the sufferance of others, but then caveated the statement with false exculpatory sentiments that burning down nature is not the way. Presumably, this false exculpatory statement is what defense counsel is seeking to introduce despite it being plainly hearsay as introduced by the defense.

Defendant then mused about how there had been "a lot of fires around this specific area," and Detective Knight asked why that might be. In response to which, defendant passionately explained that if this area were targeted, it would be because –

> [T]hey're like oh these people think they can have their own little road to go up here in Paradise and just, you know, be here with all their money while we're basically being enslaved for them. Oh, hell no. We're gonna find them where they're at and burn everything down, you know.

(Trial Exhibit 880.) The government's clip at the first trial included defendant's relevant musings and Detective Knight's question, "Why does that happen here, though?" that preceded the pertinent statement. (Id.)

The defense also characterizes Special Agent Beals as having raised the theory of punishing the wealthy. (Def. Motion at 3:15.) That is also incorrect. Preceding this question, defendant repeatedly expressed this precise sentiment by going on lengthy rants about the wealthy and stating, for example, that people with power "don't wanna let it go" and can only be disrupted by "plagues or …. violence"; "nobody gives a shit until it's your house that's burning down"; in France, "when we got tyrants getting power …. We created the guillotine for him, chopped his head off, you know"; and these people will ignore reality "until you know [they] burn down. Then it's not a hoax no more." Defendant, not Special Agent Beals, introduced this notion into the conversation repeatedly.

**C. Exhibits 886 and 887 Provide the Context for Exhibit 888**

Exhibit 888 is not the only excerpt from defendant's lengthy rant. Exhibit 887 (which the defense conveniently does not mention in its Motion) includes the beginning

of the same rant that Exhibit 888 is excerpted from. In Exhibit 887, investigators explained to defendant why visiting the site of the fire could be helpful. It was in response to this that defendant exploded into yet another rant about the government, people in power, the wealthy, and oppressors. Much of that is included in Exhibit 887 without veering into a gratuitous amount of political opinion. To play it all the way through to Exhibit 888 would be confusing and a waste of the jury's time. It is also not required by Rule 106 (further discussed below).

The defense also does not mention Exhibit 886 in its Motion. Exhibit 886 is the conversation immediately preceding investigators asking defendant to join them for a site visit and includes a discussion of the fire, how everything is burning, and how the rich are ruining everything. Exhibit 888 is not out of context. The relevant context that defendant's statements were in response to is provided in both Exhibits 886 and 887, and the lengthy rant between Exhibit 887 and Exhibit 888 is simply more of the same.

**D. Explanation or Paraphrasing by Special Agent Beals Was in Response to Defense Questioning**

The Motion claims that despite the government representing that Special Agent Beals would not be providing opinions (in the context of expert opinions), Special Agent Beals nonetheless explained how he understood defendant's statement. This clever juxtaposition of facts leaves the misimpression that the government elicited such an opinion or explanation. This is, again, incorrect. The defense's own cross-examination questions led the defense to an answer it did not like. And the defense now seeks a preemptive bar on a government witness's ability to respond to cross-examination questions, giving the defense full range to exploit pretrial rulings and pose questions that witnesses have no meaningful way of responding to (much like the defense did with Special Agent Montevidoni and the Court's Rule 404(b) rulings).

At trial, the defense cross-examined Special Agent Beals, "[defendant] never admitted to starting the Lachman Fire, did he?" Special Agent Beals responded that defendant *did* state, "That's what I disrupted" in reference to the fire. (June 18, 2026 Tr.

at 1818:12-15.) Defense counsel then pointed out, "That's your interpretation of that" and asked, "Did he ever admit to starting the Lachman Fire? Are you saying that he admitted to starting the Lachman Fire? Is that your testimony under oath?" (Id. at 1818:16-22.) Special Agent Beals then explained why he understood defendant's statement to be akin to an admission considering the context of the particular statement and other statements defendant made during the eight-and-half hour interview. (Id. at 1818:23-1819:5.) Special Agent Beals simply answered the defense's questions.

Likewise, any "paraphrasing" that the defense seeks a preemptive bar against was again on cross-examination. The government entered the clip into evidence and played it for the jury.

## III. THE MOTION SHOULD BE DENIED

### A. The Defense's Proposed Pretrial Designation Protocol Is Unwarranted

All audio clips the government intends to use have been produced, weeks before trial, and most were produced months ago. The complete audio and the certified transcripts were likewise produced months ago, including the excerpt from which Exhibit 888 was drawn. The defense therefore suffers no prejudice, and no additional designation or production procedure is warranted. Criminal trials routinely proceed without such requirements. Aligned with common practice, if the government supplements the existing exhibits with additional excerpts, it will disclose them to defense counsel in a timely manner (as was done before the first trial). The defense's proposed designation rules are unnecessary and burdensome.

### B. Rule 106 Does Not Permit the Defense to Admit Self-Serving Hearsay Simply Because the Hearsay Appears Near Another Statement

Rule 106 provides that when a party introduces part of a recorded statement, an adverse party may require introduction of any other part that "in fairness ought to be considered at the same time." Fed. R. Evid. 106. But the Advisory Committee Notes specifically highlight that, in criminal cases, "the mere fact that a defendant denies guilt

before later admitting it does not, without more, mandate the admission of his previous denial." Id. (citing United States v. Williams, 930 F.3d 44 (2d Cir. 2019)).[1]

The Ninth Circuit applies a three-part test: the excerpt must distort meaning, exclude substantially exculpatory material, or exclude portions explanatory of admitted passages. United States v. Lopez, 4 F.4th 706, 715 (9th Cir. 2021). Where "the government's excerpts are not misleading and do not distort the meaning of [defendant's] statements, the district court [does] not abuse its discretion by denying [defendant's] request to admit supplemental excerpts." United States v. Martis, No. 22-10056, 2024 WL 957522, at *1 (9th Cir. Mar. 6, 2024). Indeed, "it is often perfectly proper to admit segments of prior testimony without including everything, and adverse parties are not entitled to offer additional segments just because they are there and the proponent has not offered them." United States v. Vallejos, 742 F.3d 902, 905 (9th Cir. 2014) (cleaned up). If the "complete statement [does] not serve to correct a misleading impression in the edited statement that is created by taking something out of context," then the rule of completeness does not apply. Id. (cleaned up).

The defense's request is overbroad. If the defense intends to invoke Rule 106, it must identify the specific portions it seeks to introduce. Should defendant point to particular passages related to the government's anticipated exhibits where additional surrounding context would materially alter the meaning of an admitted excerpt, the government will evaluate any such request in good faith. Without that specificity, however, the government cannot meaningfully respond, and the Court cannot determine whether the proposed material actually corrects a distortion or whether it is independently admissible, including under the bar on self-serving hearsay.

---

[1] This applies equally to defense expert testimony. At the first trial, defense expert Ed Nordskog repeatedly injected defendant's self-serving statements by volunteering that defendant "denied starting the fire" in response to narrowly tailored questions concerning only portions of his statement the government introduced (e.g., that he admitted being the only person present). The Court should prohibit the defense from again using expert testimony to circumvent the hearsay rules or to introduce defendant's inadmissible denials under the guise of Rule 106.

The one clip the defense does identify, Exhibit 888, does not require inclusion of the pages of ranting that precede it. The defense's completeness arguments fail because it seeks wholesale admission of defendant's lengthy repetitive commentary (that adds nothing of evidentiary value) without identifying any specific passage that actually corrects a distortion or alters the meaning of the excerpts the government intends to introduce. Rule 106 requires precision: the proponent must show that the omitted material *meaningfully changes* the interpretation of the admitted portion. The defense has not done so and cannot do so.

Exhibit 888 is not presented in isolation. It is part of a sequence of recordings, and Exhibits 886 and 887 already provide the relevant surrounding context. Exhibit 886 contains the discussion immediately preceding the investigators' request for a site visit. And Exhibit 887 contains the investigators' explanation for why it would be helpful and defendant's subsequent response, the beginning of the very rant from which Exhibit 888 is excerpted. Exhibit 887 sufficiently captures defendant's rant that shows that defendant's statements in Exhibit 888 flowed naturally from the same line of conversation. Nothing about the government's selection removes or distorts its meaning.

The defense's insistence on playing the uninterrupted rant between Exhibits 887 and 888 ignores that this intervening segment is merely more of the same: extended political tirades untethered to any factual issue the jury must decide. Presenting that material would not clarify defendant's meaning; it would simply burden the jury with cumulative and confusing commentary that Rule 403 allows the Court to exclude.

Because the omitted portions do not change the meaning of the admitted excerpts, do not supply exculpatory material, and do not explain anything that would otherwise be unclear, Rule 106 does not apply. The defense's request is therefore not only overbroad, but substantively unsupported as it relates to Exhibit 888, and the Court should reject it.

### C. The Defense's Request to Bar Agents From Testifying About Their Understanding of Interview Statements Has No Basis in Rule 701 or Ninth Circuit Precedent

The defense's request to categorically bar interviewing investigators from testifying to their understanding of what defendant said during the eight-and-half hour interview is unsupported by Rule 701 and directly contrary to Ninth Circuit precedent. To cite a recent example, in United States v. Gessen, No. 24-2979, 2026 WL 2640887, at *1 (9th Cir. Sept. 8, 2026), the court upheld the admission of an agent's testimony explaining his understanding of the defendant's recorded statements because the agent testified only as to what he understood the defendant to be saying and did not claim to know what was in the defendant's head. The Ninth Circuit rejected arguments that such testimony is speculative or improper opinion, holding that opinions grounded in firsthand perceptions of an interview fall well within Rule 602's personal-knowledge requirement, which "includes opinions and inferences grounded in observations and experience." Id. (quoting United States v. Whittemore, 776 F.3d 1074, 1082 (9th Cir. 2015)). Rule 701 similarly permits lay opinion when it is rationally based on perception, helpful to the jury, and not rooted in specialized knowledge. These are standards that interviewing agents satisfy when they testify about statements they personally heard, questions they asked, and the context they directly observed.

Gessen also confirms that an agent's interpretive testimony is helpful when the defendant's statements are vague, coded, layered, or delivered in a way that requires context to understand. The Ninth Circuit recognized that "a lay witness' opinion concerning the witness' understanding of the declarant's statements or conduct may be helpful to the jury," particularly where context, tone, implication, or sequence illuminate the meaning of the words used. Gessen, 2026 WL 2640887 at *1 (quoting United States v. Simas, 937 F.2d 459, 465 (9th Cir. 1991)) (reasoning that the defendant's statements to the FBI agents were vague and, at times, seemingly incomprehensible, and thus, the listener's understanding of the words and innuendo was helpful to the jury in

determining what the defendant meant to convey). This principle applies with even greater force when an interview spanned eight-and-half hours, involved back-and-forth questioning, and included statements whose meaning depends heavily on the way, the timing, the context of defendant's delivery of them. So long as agents do not purport to tell the jury what defendant intended and instead testify to how they themselves understood the conversation while conducting the interview, Rule 701 is satisfied. See United States v. Perez, 962 F.3d 420, 436 (9th Cir. 2020) ("whether evidence is more properly offered by an expert or lay witness depends on the basis of the opinion, not its subject matter").

The defense's categorical bar is inconsistent with this framework. It would prevent agents from explaining their understanding of statements even when that understanding is based entirely on personal perception and is necessary for the jury to evaluate the significance of a long, context-dependent interview. Such testimony is permissible because it does not speculate about mental state and does not rely on specialized knowledge. Rather, it reflects the agent's firsthand experience participating in the interview and observing its context, tone, and progression.

Finally, the defense's request is untenable because it would prevent agents from answering questions that the defense itself may pose. In the first trial, Special Agent Beals provided the testimony that the defense now objects to because the defense, on cross-examination, asked him to acknowledge that defendant did not admit to starting the fire, but Special Agent Beals could not due to his understanding of defendant's statement. Thus, in response to repeated questions (and an insinuation that Special Agent Beals was perjuring himself), Special Agent Beals explained why he understood defendant's statement in the way he did. To impose a pretrial gag rule barring any such explanations would leave agents unable to respond to defense questioning without risking violation of an order.

### D. The Defense's Request for a Ruling That Rule 106 Completeness Does Not Open the Door Is Premature and Internally Inconsistent

The defense argues completeness requires more context, while also asking the Court to avoid "opening the door," which is exactly what admitting broad context does. This internal contradiction underscores how the defense is seeking strategic advantage, not Rule 106 fairness.

Rule 106 does not open the door to excluded evidence. However, should the defense invoke Rule 106 to have the government admit "context" to the jury, the defense cannot also argue that the government may not, in fact, present it due to a separate objection the defense maintains. Nor could the defense assert that it does not open the door to exploring a fact the defense has now inserted into the trial.

Nonetheless, this request is premature as the defense is asking the Court to rule in the abstract about hypothetical interactions with other rulings without identifying the issue with enough specificity for the government nor the Court to evaluate the merits.

## IV. CONCLUSION

The government respectfully requests that the Court deny the Motion in its entirety.