Steven A. Haney, Sr., Esq. (Mich. Bar No. P63947)
Admitted *Pro Hac Vice*
Haney Law Group, PLLC
22815 Kelly Rd.
Eastpointe, MI 48021
Telephone: (248) 414-1470
E-Mail: steve@haneygroup.net

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN RINDERKNECHT,<br>aka "Jonathan Rinder,"<br>aka "Jon Rinder,"<br><br>Defendant. | Case No. 2:25-cr-00833-AH<br><br>**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION IN LIMINE REGARDING DEFENSE EXPERT TESTIMONY (DKT. 302); DECLARATION OF STEVEN A. HANEY, SR.**<br><br>Hearing Date: October 22, 2026<br>Hearing Time: 10:00 a.m.<br>Location: Courtroom of the Hon. Anne Hwang |

Defendant Jonathan Rinderknecht, through counsel, opposes the government's Motion in Limine Regarding Impermissible Defense Expert Testimony (Dkt. 302). This opposition is based on the following memorandum, the files and records in this case, and any argument the Court may permit.

Dated: October 21, 2026

Respectfully submitted,

HANEY LAW GROUP, PLLC

/s/ Steven A. Haney, Sr.
STEVEN A. HANEY, SR. (P63947)
Attorney for Defendant

JONATHAN RINDERKNECHT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The government asks the Court to exclude three defense expert opinions without a *Daubert* hearing, on a motion filed October 15, 2026, seven days before the hearing it noticed. Every objection it raises goes to the weight of the testimony, not its admissibility. The Supreme Court said so in the very case the government relies on: "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

Thomas Guzman spent 26 years with the United States Forest Service and has been a nationally qualified wildland fire investigator since 2011, the same qualification held by the government's origin-and-cause witness. He has written more than one hundred origin-and-cause reports and taught the course that trains wildland fire investigators, including investigators in this case.

Edward Nordskog investigated fires and bombings for 23 years with the Los Angeles County Sheriff's Department, is a Certified Fire Investigator, contributed to the national wildland investigation curricula and guide, and is cited in PMS 412, the most authoritative treatise for wildland fire investigations. Each will testify within his disclosed field.

## II. ARGUMENT

### A. The Government's Own Authorities Permit Experience-Based Expert Testimony and Leave Disputes Over It to Cross-Examination.

Rule 702 permits a witness to be "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The government cites *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), for the proposition that the gatekeeping function applies to all expert testimony. The same opinion holds

that the reliability inquiry is "flexible," and that the *Daubert* factors "neither necessarily nor exclusively appl[y] to all experts or in every case." *Id.* at 141–42. It also recognizes that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Id.* at 156.

The government's motion asks the Court to apply the peer-review and error-rate factors to field investigators whose expertise is experience-based. *Kumho Tire* rejects that approach. The government's disagreements with these opinions are proper subjects for cross-examination. *Daubert*, 509 U.S. at 596.

**B. The Confirmation-Bias Opinions (Guzman Opinion 8; Nordskog Opinion 8) Address Compliance With the Governing Investigative Standard.**

The government concedes that NFPA 921 directs fire investigators to guard against confirmation bias. (Dkt. 302 at 6.) NFPA 921 and NWCG PMS 412 are the standards the government's own origin-and-cause witness applied in this case. The defense experts do not offer a psychological diagnosis of anyone. They will testify to what those standards require, including that hypotheses be tested before a final conclusion is reached and that alternative causes be considered, and whether the sequence of this investigation followed those requirements. That is the application of a recognized methodology to the facts, which is what Rule 702(d) contemplates. PMS 412, the most authoritative text on wildland fire investigations, specifically addresses confirmation bias. Nat'l Wildfire Coordinating Grp., *Guide to Wildland Fire Origin and Cause Determination*, PMS 412, at 79 (2025). Mr. Guzman testified at the first trial that awareness of bias is part of the scientific method applied under PMS 412 and NFPA 921. (Tr. Vol. 10, 2332.)

The government's own motion confirms the point. It characterizes the open-flame testing as "confirmatory testing." (Dkt. 302 at 6.) Whether testing performed after a conclusion was reached, and after a defendant was charged,

conforms to the investigative standard is a question of fire-investigation methodology. The government is free to dispute it on cross-examination. And the government's statement that it would call its own rebuttal experts on confirmation bias (Dkt. 302 at 7 n.3) concedes that the subject is a proper one for expert testimony.

At the first trial, Mr. Guzman testified to the importance of separating the origin-and-cause investigation from the case investigation, over the government's objection, which the Court overruled. (Tr. Vol. 10, 2332–2334.)

To remove any concern, the defense proposes this limitation: neither defense expert will testify that any witness is biased, dishonest, or acted in bad faith. Each may testify to what NFPA 921 and PMS 412 require, including their provisions on expectation and confirmation bias, and whether the sequence of this investigation conformed to those standards. Mr. Nordskog's testimony will remain within the general behavioral scope the Court permitted at the first trial.

**C. Mr. Guzman's Opinions on the FRL Testing Are Field Opinions, Not Engineering Opinions (Guzman Opinions 8 and 11).**

The government acknowledges that Mr. Guzman accepts the laboratory's data "as presented." (Dkt. 302 at 7.) He does not challenge calibration, instrumentation, or the execution of any test. His opinion is whether the conditions under which the tests were run reflect the conditions at the claimed origin: the vegetation, the weather, and the ground. That comparison is the core work of a wildland origin-and-cause investigator, and it rests on the laboratory's own reported test conditions and the investigative record. Fed. R. Evid. 702(b).

The government's origin-and-cause witness is not an engineer either, and his report relies on Fire Research Laboratory testing. If one wildland investigator may rely on those tests, another may explain their limits. Mr. Guzman offered the same kind of opinion about the laboratory's cigarette testing at the first trial. (Tr.

Vol. 9, 2228–2231.) The government's argument that he "conflates" ignition testing with fire spread (Dkt. 302 at 8) is a disagreement on the merits, and it belongs in cross-examination. *Daubert*, 509 U.S. at 596. There is nothing barring the government from thoroughly cross-examining Mr. Guzman on his opinion.

**D. Mr. Guzman's Opinion on Reporting Parties Was Admitted Over the Same Objection at the First Trial (Guzman Opinion 14).**

The government objected at the first trial that this testimony was behavioral, and the Court overruled the objection. (Tr. Vol. 10, 2331–2332.) Mr. Guzman's opinion rests on decades of experience as a firefighter and investigator interacting with members of the public who report fires. That is experience-based knowledge of the kind *Kumho Tire* recognizes. 526 U.S. at 156. Mr. Guzman will testify within the scope the Court permitted at the first trial and will offer no opinion on the defendant's intent, motive, or state of mind.

**E. At Minimum, the Court Should Defer Ruling to Trial.**

If the Court has concerns about any opinion, the defense requests that it defer ruling until the testimony is offered, and permit a proffer outside the presence of the jury, rather than exclude opinions pretrial on a motion the defense has had days to answer. Fed. R. Evid. 104(a).

**III. CONCLUSION**

The Court should deny the motion. In the alternative, the Court should adopt the limitation proposed in Section II.B and defer any remaining questions to trial.

Dated: October 21, 2026

Respectfully submitted,

HANEY LAW GROUP, PLLC

/s/ Steven A. Haney, Sr.
STEVEN A. HANEY, SR. (P63947)

Attorney for Defendant
JONATHAN RINDERKNECHT

**DECLARATION OF STEVEN A. HANEY, SR. REGARDING USE OF GENERATIVE ARTIFICIAL INTELLIGENCE**

I, Steven A. Haney, Sr., declare as follows:

1. I am counsel of record for Defendant Jonathan Rinderknecht in this matter, admitted pro hac vice. I make this declaration under Section A.5 of the Court's Standing Order for Criminal Cases. I have personal knowledge of the facts stated in this declaration.

2. In preparing Defendant's Opposition to Government's Motion in Limine Regarding Defense Expert Testimony (Dkt. 302), I used a generative artificial intelligence tool to assist in generating and structuring portions of the opposition.

3. I have reviewed the source material cited in the opposition, including the cases, rules, the government's motion, and the trial transcript, and I have verified that the content generated with the assistance of artificial intelligence is accurate and complies with my Rule 11 obligations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 21, 2026, at Phoenix, Arizona.

/s/ Steven A. Haney, Sr.
STEVEN A. HANEY, SR. (P63947)