TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
MARK A. WILLIAMS (Cal. Bar No. 239351)
Assistant United States Attorney
Chief, Environmental Crimes & Consumer Protection Section
MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
DANBEE C. KIM (Cal. Bar No. 350014)
Assistant United States Attorneys
Environmental Crimes & Consumer Protection Section
1400 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-3359/8644/6530
Email: mark.williams@usdoj.gov
matthew.o'brien@usdoj.gov
danbee.kim2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN RINDERKNECHT,<br>aka "Jonathan Rinder,"<br>aka "Jon Rinder,"<br><br>Defendant. | No. CR 25-833(A)-AH<br><br><u>GOVERNMENT'S MOTION IN LIMINE REGARDING LATE-DISCLOSED PROPOSED DEFENSE EXPERT</u> |

Plaintiff United States of America, by and through its counsel of record, Assistant United States Attorneys Mark A. Williams, Matthew W. O'Brien, and Danbee C. Kim, hereby files its motion <u>in limine</u> to exclude the testimony of late-disclosed defense expert Michael Cole, a witness the defense disclosed on the seventh day of trial.

//

//

This motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: November 11, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division

/s/
MARK A. WILLIAMS
MATTHEW W. O'BRIEN
DANBEE C. KIM
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. TIMELINE .......... 1

III. THE PROPOSED "EXPERT" TESTIMONY .......... 3

IV. LEGAL FRAMEWORK .......... 4

V. COLE IS NOT A FIREWORKS EXPERT .......... 6

VI. COLE'S OPINION FAILS TO MEET THE OTHER REQUIREMENTS OF DAUBERT AND RULE 702 .......... 6

- A. Not based on sufficient facts or data .......... 7
- B. Will not help the trier of fact to understand the evidence or to determine a fact in issue .......... 7
- C. Not the product of reliable principles or methods .......... 8
- D. No reliable application of the principles and methods to the facts of the case .......... 8

VII. THIS IS DIFFERENT THAN NEWLY DISCOVERED FACT EVIDENCE .......... 9

VIII. SUBSTANTIAL AND UNAVOIDABLE PREJUDICE WILL RESULT IF THIS TESTIMONY IS PERMITTED; RULE 403 REQUIRES EXCLUSION .......... 9

IX. CONCLUSION .......... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The defense is grasping at straws. In a last-ditch attempt to prove their baseless theory that fireworks caused the Lachman / Palisades Fire, on the seventh day of trial – just a few hours after the government's experts finished testifying and could not respond – the defense disclosed a new expert, Michael Cole ("Cole"). Cole was fireman 20 years ago and now works for a party in connection with civil litigation related to the fire. On Tuesday afternoon, nearly two years after the fire, Cole contacted the defense to claim that a brown stain on a resident's driveway must somehow be related to the fire. His entire "expert" opinion is based on six drone photographs of a brown stain on the driveway taken in either February 2025 or 2026. No up-close in-person inspection, no other testing. Six drone photographs, that's it.

This information was not timely disclosed. Far from it: the defense intentionally withheld this information, which makes it inadmissible. Cole's proposed opinion is also inadmissible and should be excluded for at least six additional reasons: (1) Cole is not a fireworks expert; (2) the proposed opinion will not help the trier of fact to understand the evidence or to determine a fact in issue; (3) the proposed opinion is not based on sufficient facts or data; (4) the proposed testimony is not the product of reliable principles and methods; (5) the proposed testimony does not reflect a reliable application of the principles and methods to the facts of this case; and (6) the unfair prejudice under Rule 403 is unavoidable.

### II. TIMELINE

In an email on November 11th, the defense stated that it first received information regarding Cole via voicemail at 10:35 a.m. on Monday, November 9th. That information was from an attorney involved in the Palisades civil litigation. The defense saw the message and spoke to the civil attorney working with Cole over the lunch break on Monday – meaning that at lunch on Monday, the defense knew the name of the witness

and (at a minimum) the general nature of his expert testimony *while the government's lead origin and cause expert was still testifying on direct*. The defense then also spoke with Cole around 8:00 p.m. on Monday. None of this was disclosed to the government or the Court on Monday.[1]

The defense first emailed the Court at 9:07 p.m. on Monday, November 9th, stating that it had "an issue that needs to be addressed to the Court in the morning." No additional information was provided.

The defense then emailed the government at 12:19 a.m. on November 10th, stating (in its entirety) that "[w]e will be addressing in the morning the existence of a newly discovered witness that came to our attention today while we were in the pm session. We will explain in the morning." Again, no additional information was provided.

This timeline is troubling. Although the defense had received information about Cole *while government expert Derek Hill was still testifying on November 9th*, the defense did not provide any of this information to the government at that time (or even that same day). Instead, they waited until Hill was off the stand before disclosing any information about Cole.

Further, despite knowing about Cole at lunch and speaking with him at length at 8:00 p.m. on November 9th, the defense did not provide his name or any other information to the government on that day. Inexplicably, the defense sent the government a vague email after midnight on November 10th stating **"[w]e will be addressing in the morning the existence of a newly discovered witness that came to our attention today while we were in the pm session. We will explain in the morning."**

---

[1] As the Court knows, there are three retained defense attorneys and one law student at the defense counsel table. Two of the retained attorneys do not appear to be taking any witnesses. As such, starting at lunch on Monday, they had plenty of time to obtain and disclose this information to the Court and government. They chose not to.

On Tuesday, when the defense finally revealed this information and the Court told defense counsel to immediately prepare an expert disclosure, counsel did so during trial over the course of about two hours. It is inexcusable that counsel did not do that on Monday while the government's expert was still on the stand.

This gamesmanship must carry consequences. There is absolutely no reason why the defense could not have provided information about Cole and his opinions immediately after the defense spoke with civil counsel at lunch on November 9th. Or when the defense emailed the Court at 9:07 p.m. requesting a hearing on this very issue. Or in its email at 12:19 a.m. on November 10th.

Instead, the defense made the intentional decision not to provide any information about Cole to the Court or government – not his name, not his opinion – until after court resumed the next day (*after the government's expert was off the stand*). These tactics must not be condoned by the Court and are an independent reason to exclude Cole's testimony.

## III. THE PROPOSED "EXPERT" TESTIMONY

The defense's expert disclosure states that Cole will testify: (1) that he flew a drone over a private residence on February 17, 2025, and his done took pictures of what he claims is a "burn stain and smoke trail" on the concrete; (2) based on his training and experience (none is identified), the marks appear to be "physical evidence of a launched firework"; and (3) based on his training and experience (again, none is identified), "they appeared to be stains from discharged fireworks."

Cole's entire expert testimony is based on six photographs of a brown stain on a driveway taken by a drone on a single day in either February 2025 or 2026. He never inspected the brown stain in person; he never ran any sort of testing. Instead, he flew his drone over the private residence for a few hours one day and bases his entire opinion on six photographs.

The timestamps on his photographs state that the photographs were taken in 2026. Cole, however, claims that the photographs were taken in 2025.

Cole was hired and paid by litigants in connection with the large and complex Palisades civil lawsuits. Those attorney(s) reached out to the defense to put the defense in contact with Cole. Based on the work log that was provided by the defense, Cole

spent a total of 8.3 hours on his entire expert analysis (including .3 hours of "planning" phone calls).

## IV. LEGAL FRAMEWORK

As the defense well knows, all experts must be disclosed pretrial. Rule 16(b)(ii) provides that "[t]he time must be sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence" (emphasis added). This rule is clear and unequivocal for good reason: expert testimony can have a powerful impact on the jury, so all defense experts must be made before trial so that attorneys, government experts, and the Court can thoroughly evaluate those opinions.[2]

Under Rule 702, the defense must first demonstrate that Cole is "qualified as an expert by knowledge, skill, experience, training, or education" to render his proposed opinions. Next, the defense must also establish that: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 598 (9th Cir. 1996) ("[I]t is the proponent of the expert who has the burden of proving admissibility").

Expert testimony may be objectionable where it is irrelevant, unduly prejudicial, or unnecessarily confuses or misleads the jury. See Fed. R. Evid. 402, 403; United States v. Spangler, 810 F.3d 702, 707 n.3 (9th Cir. 2016) (relevance is "folded into the Daubert standard under Federal Rule of Evidence 702"). Regardless of the relevance of the proffered expert testimony, a court can also exclude it if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 595

---

[2] Rule 16(c) provides a continuing duty to disclose information about previously-disclosed experts; it does not provide a loophole to disclose new experts mid-trial.

(1993) (quoting Fed. R. Evid. 403). Because expert testimony carries the "aura of special reliability and trustworthiness," it raises a substantial danger of undue prejudice and confusion of the issues so courts must pay particular attention in assessing its admissibility. See United States v. Amaral, 488 F.2d 1148, 1152 (9th Cir. 1973).

The "trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592-93. "The trial court acts as a 'gatekeeper' to exclude expert testimony that does not meet the relevancy and reliability threshold requirements." Cooper v. Brown, 510 F.3d 870, 942 (9th Cir. 2007) (construing Daubert and Rule 702). The "gatekeeping" principles of Daubert apply equally to all proffered expert testimony under Rule 702 as they do to scientific testimony. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999); see also Fed. R. Evid. 702, Advisory Comm. Notes ("the amendment [to Rule 702] does not distinguish between scientific and other forms of expert testimony. The trial court's gatekeeping function applies to testimony by any expert.").

Daubert articulated a two-step guide for district courts to follow in executing their gatekeeping function: first, the trial court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue"; and second, the court must ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact. Daubert, 509 U.S. at 592-95. Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact. Id. at 591.

In determining reliability, the Court examines a variety of non-exclusive factors: "(1) whether a scientific technique 'can be (and has been) tested,' (2) 'whether the theory

or technique has been subjected to peer review and publication,' (3) 'the known or potential rate of error' of a particular scientific technique,' and (4) 'general acceptance' in the relevant scientific community." Christopher Clarke v. Air & Liquid Sys. Corp., No. 2:20-CV-00591-SVW-JC, 2021 WL 1534975, at *3 (C.D. Cal. Mar. 18, 2021) (quoting Daubert, 509 U.S. at 592-96). In determining relevance, the Court asks whether the testimony "logically advances a material aspect of the proposing party's case." Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1315 (9th Cir. 1995).

## V. COLE IS NOT A FIREWORKS EXPERT

Cole has been a private expert for the last 19 years. He is not a fireworks expert. In fact, the words "fireworks," "firework," "explosive," "explosives," "mortar," and "firecrackers" do not appear a single time in his C.V. Cole has no training or experience whatsoever regarding fireworks. He has never been a chemist or a fire engineer; he has no training in either area.

He has zero qualifications, training, or experience that would allow him to testify that brownish marks on a driveway a month after a fire are somehow indicative of fireworks. Tellingly, in the "bases and reasons" section of his expert disclosure, Cole mentions nothing about any experience with fireworks or stains left by fireworks.

The fact that Cole was a fireman 20 years ago does not make him qualified to opine about supposed firework marks on a driveway. In fact, his experience as a fireman cuts the other way – it will suggest to jurors that he is qualified to talk about everything related to fires, when in fact he is not. His firefighting background will actually be highly misleading in this context.

This is not a close call. Cole's testimony must be excluded because he is not qualified to render any opinions regarding firework markings on concrete.

## VI. COLE'S OPINION FAILS TO MEET THE OTHER REQUIREMENTS OF DAUBERT AND RULE 702

The proposed expert testimony fails every single requirement of Rule 702.

**A. Not based on sufficient facts or data**

Cole's fireworks opinion is based entirely on six drone photographs taken in either February 2025 or 2026. Although the defense produced 124 additional photographs taken by Cole's drone, they made clear via email that "in our opinion, [the additional photos] are not relevant to this limited scope testimony." As such, Cole's opinion rests on six drone photographs taken on one day either a month or year after the fire.

Cole did not inspect the supposed fireworks "burn stain" in person; all of his photographs were taken from outside the property fencing. He did not conduct any testing on the supposed soot, for example chemical testing to confirm if it was actually fireworks residue. He also did not test fireworks on any concrete surfaces to compare his results to what he saw. The defense attempts to justify Cole's opinion by calling it "narrow." It is indeed "narrow" because it is based on almost nothing – no in person inspection, no testing, no data whatsoever.

Again, this is not a close call. Cole's entire opinion is based on six drone photographs of a brown stain on a driveway a month (or year) after the fire. Under Rule 702(b), this is clearly not sufficient facts or data on which to base an expert opinion that fireworks were launched from there in December 2024 or January 2025.

**B. Will not help the trier of fact to understand the evidence or to determine a fact in issue**

Under Rule 702(a), the defense must establish that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." They cannot here.

Cole's testimony about a brown stain on driveway seen a month (or possibly a year) after a fire will confuse jurors because there is no context for his opinion, such as when the stain was left. It could have been left a month after the fires, making it entirely irrelevant. He also fails to specify whether it was left by a ground or aerial firework (without question, a ground firework could not have started either fire dozens of yards away). The jury would have to figure that out themselves; Cole provides no answers.

The lack of specifics regarding Cole's opinion will invite jurors to speculate, something they are prohibited from doing, and could mislead them into thinking that a firework started the fire (even though Cole does not render that opinion).

Cole attempts to sidestep this issue by stating that he "will not offer an opinion on the origin or cause of the Lachman or Palisades Fire." (Disclosure at 1.) If his opinion is not relevant to origin in cause, then what is it relevant to? Allowing this testimony will necessarily lead to juror confusion and invite significant speculation.

**C. Not the product of reliable principles or methods**

Cole's expert disclosure fails to list any principles or methods that he employed in rendering his opinions. His expert disclosure is devoid of any methods that a fire scientist, fire research engineer, chemist, or forensics professional would use in examining soot staining or charring (because Cole has none of this expertise).

The expert disclosure cannot possibly satisfy Rule 702(c).

**D. No reliable application of the principles and methods to the facts of the case**

Cole's opinion is necessarily conclusory because there is no explanation as to how he arrived at it. Cole does not compare fireworks "stains" that he has seen in the past; nor does he cite or rely on any research regarding marks left by fireworks. In fact, Cole provides no analysis at all to support his opinion.

The expert disclosure claims that Cole will not render any opinions about origin and cause, but then confusingly claims that his opinion is based on "NFPA 921 and NWCG PMS 412, concerning the recognition and documentation of fire patterns and ignition sources." That is telling – although Cole will not testify to origin and cause (per his disclosure), the defense will argue that this is evidence of a possible fireworks ignition source of the Lachman / Palisades Fire. That argument cannot be based on Cole's baseless opinion that lacks any analysis and has no evidentiary support.

The expert disclosure does not satisfy Rule 702(d).

## VII. THIS IS DIFFERENT THAN NEWLY DISCOVERED FACT EVIDENCE

As the Court knows, experts can be found and hired to testify regarding a variety of things, many of which are entirely without merit. Expert testimony is not factual testimony. It is distinct from a fact witness coming forward with newly discovered evidence (for example, videos showing fireworks). Cole's opinion must therefore meet certain legal requirements before he can testify during a federal criminal trial (again, as opposed to a fact witness coming forward with new photographs or videos, which this is not).

A case like this with significant publicity attracts "experts" who often work for free or at significantly reduced rates just to be associated with the case (like defense expert Thomas Guzman who was hired by the defense for just $500). The government has serious doubts and concerns about Cole's motivations in this case, especially given that he did not come forward with this information until November 9th, almost two full years after the fire. Adding to these concerns is his involvement with the highly litigious and complex Palisades Fire civil litigation. These concerns should give the Court pause when assessing Cole's credibility and before permitting his flimsy "expert" opinions.

## VIII. SUBSTANTIAL AND UNAVOIDABLE PREJUDICE WILL RESULT IF THIS TESTIMONY IS PERMITTED; RULE 403 REQUIRES EXCLUSION

As the Court knows, the government's origin-and-cause experts have already testified and the government only has one remaining witness in its case-in-chief. If the defense had disclosed information about Cole on November 9th, the Court could have recessed trial, taken up this issue, and possibly figured out a solution. Instead, the defense made the intentional decision not to immediately provide this information to the Court or government. That decision comes with consequences.

Substantial prejudice will result to the government's case if this testimony were permitted. The government has received only a short response to its discovery request to

the defense so cannot fully respond to this evidence.[3] Government experts have not been able to fully evaluate Cole's information (and obviously were not able to address it during the government's case-in-chief). If Cole testifies in the defense case, it will appear to the jury that the government was "hiding" evidence, when in fact the government did not even have any of this information.

As such, Rule 403 provides an independent basis to exclude this testimony given that the extremely minimal probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. Brown staining on a driveway is probative of nothing – it could be oil, rust, or any other number of normal household materials (none of which is addressed by Cole). This evidence is confusing at best, and misleading at worst. The prejudicial nature of this evidence clearly outweighs any minimal probative value.

The prejudicial nature of this evidence cannot be overstated. The damage to this case that would result from allowing this speculative, baseless opinion from an "expert" in the civil litigation cannot be undone.

## IX. CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court exclude the proposed expert testimony.

[3] The defense has refused to provide copies of any communications with Cole, any reports of interviews with Cole, any draft reports prepared by Cole, or any materials related to his work in the civil litigation.