Steven A. Haney, Sr., Esq. (Mich. Bar No. P63947)
*Admitted Pro Hac Vice*
Haney Law Group, PLLC
22815 Kelly Rd.
Eastpointe, MI 48021
Telephone: (248) 414-1470
E-Mail: Steve@haneygroup.net

Attorney for Defendant
JONATHAN RINDERKNECHT

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JONATHAN RINDERKNECHT, aka "Jonathan Rinder," aka "Jon Rinder,"<br>Defendant. | Case No. 2:25-cr-00833-AH<br>**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S SUPPLEMENTAL BRIEF REGARDING SANCTIONS (DKT. 375); DECLARATION OF STEVEN A. HANEY, SR.**<br>Trial Date: November 2, 2026<br>Courtroom of the Hon. Anne Hwang |

Defendant Jonathan Rinderknecht responds to the government's supplemental brief regarding sanctions (Dkt. 375).

## INTRODUCTION

The government's brief concedes the two points that decide this motion. First, it agrees that the Court "may not find a violation of Rule 26.2 that predates the Court's 'order' requiring defendant to disclose Guzman's statements." Dkt. 375 at 7. Second, it agrees that before a defense witness may be excluded under Rule 16, the Court must find that the defense acted willfully and to gain a tactical advantage. *Id.* at 6 (citing *United States v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002)). The record meets neither standard.

More fundamentally, the government's brief is a complaint without a grievance. The government has everything. It holds all 56 GB of Mr. Guzman's

files, obtained directly from him under the Court's order. Dkt. 375 at 1–2. It holds the defense's Rule 26.2 production of every statement Mr. Guzman authored, together with a privilege log explaining every item withheld or redacted. And it has already put those materials to use, telling the Court what it believes they show. *Id.* at 3. Yet the government still asks the Court to impose the most drastic sanction available, without identifying a single statement, document, or file it lacks. Its brief offers suspicion, not proof: it "remains concerned that other, unproduced materials still exist," *id.* at 7, but names none. A sanction cannot rest on a concern the government will not, or cannot, substantiate.

## I. The Government Has Every Statement Rule 26.2 Reaches and Identifies Nothing Missing.

Within two days of the Court's ruling, the defense served a revised Rule 26.2 production of every email Mr. Guzman authored and sent to defense counsel, together with the documents he authored on his storage device, including his notes, question lists, and his edits to his expert disclosure. The production was accompanied by a privilege and redaction log, organized by source folder, that states how each folder was handled and the basis for every redaction or withholding. Unredacted copies are preserved for the Court's in camera review under Rule 26.2(c). And the government independently holds the complete recdacted set of Mr. Guzman's files from which those statements were drawn.

The government's brief does not engage with that production. It instead relies on a numerical comparison that conflates the defense's superseded first production with the government's own count of every email "with Guzman," including messages sent *to* Mr. Guzman by defense counsel and staff. Dkt. 375 at 7. Those messages are not Mr. Guzman's "statements" under Rule 26.2, Fed. R. Crim. P. 26.2(f)(1), and they are privileged and attorney work product. The rule reaches what the witness said, and the defense has produced all of it. Counting emails is not the

same as identifying a statement that was withheld, and the government does not attempt the latter.

A party that produces, logs, and supplements has not "disobey[ed] an order to produce or deliver a statement." Fed. R. Crim. P. 26.2(e). The government concedes the defense "may have some legitimate privilege claims," Dkt. 375 at 7, yet it has not challenged a single entry on the privilege log, has not asked for in camera review of any redaction, and has not identified any statement by date, subject, or content that it believes is missing. If it ever does, the defense will produce it, if it exists. Until then, there is no disobedience to sanction—only an unsupported complaint.

## II. Rule 16 Does Not Support Striking Mr. Guzman's Testimony.

### A. The Bases and Reasons for Mr. Guzman's Opinions Were Disclosed.

Rule 16(b)(1)(C) requires a complete statement of the expert's opinions and "the bases and reasons for them." Mr. Guzman's signed February 2026 disclosure did that. On the very point the government emphasizes, it stated the humidity readings Mr. Guzman took at the origin area on December 17, 2025, the nearby weather-station readings he compared them against, and the range he derived. The government's complaint is that it did not also receive the raw device data and site photographs. But the government's own authority involved a court order directing that kind of disclosure, as the government acknowledges. Dkt. 375 at 2 (discussing *United States v. W.R. Grace*, 526 F.3d 499, 513–14 (9th Cir. 2008)). No such order was entered here, and the government never asked for one.

The government's brief also shows why exclusion is unwarranted. It now has all 56 GB of Mr. Guzman's files, and it has already mined them for impeachment, asserting that they reveal "a significant discrepancy" between his readings and his opinion. Dkt. 375 at 3. A party that has the materials, has reviewed them, and has formed its attack on them has not been deprived of anything. That is a subject for

cross-examination, which has not yet concluded. A disputed basis for an expert opinion goes to its weight before the jury, not to whether the jury may hear it.

**B. Mr. Guzman Prepared No Report, and His Field Photographs and Readings Are Not "Results or Reports" of an Examination or Test.**

Rule 16(b)(1)(B) reaches "the results or reports of any physical or mental examination and of any scientific test or experiment," and only if the defendant "intends to use the item in the defendant's case-in-chief at trial, or intends to call the witness who prepared the report and the report relates to the witness's testimony." Fed. R. Crim. P. 16(b)(1)(B)(ii). The rule presupposes a report. The government acknowledges there is none: Mr. Guzman "wrote no report." Dkt. 375 at 5 (quoting Dkt. 366). And the defense did not use the photographs, video, or device data in its case-in-chief. Neither condition of the rule is met.

The government's own authority confirms the point. In *United States v. Iglesias*, 881 F.2d 1519, 1523 (9th Cir. 1989), the Ninth Circuit held that a laboratory's log notes - generated in the course of the very testing that produced the final results - were not "results or reports" because they lacked "the requisite formality or finality." Photographs of a hillside, a narrated walk-through video, and raw output from a handheld device are working materials and not a "result or report" where disclosure is required. The government argues that because Mr. Guzman wrote no final report, his raw materials must be the "result." Dkt. 375 at 5. That turns *Iglesias* upside down. Under *Iglesias*, the absence of a formal report means there is nothing for Rule 16(b)(1)(B) to reach, not that every working paper becomes a report.

Nor did Mr. Guzman conduct a "physical . . . examination" or a "scientific test or experiment." Walking a hillside and photographing it is not such an examination. Reading the ambient humidity from a handheld meter records conditions; it does not test a hypothesis or conduct an experiment. On the government's reading, every

photograph any investigator took at the scene would be the "result" of a "physical examination," a reading that would sweep in the field materials of every investigator on both sides of this case. And the one measured result the government identifies - the December 17, 2025 humidity readings - was stated in the signed disclosure itself.

**C. Rule 16(b)(1)(A) Does Not Apply.**

Rule 16(b)(1)(A) reaches items the defendant "intends to use . . . in the defendant's case-in-chief at trial." The defense did not offer or use Mr. Guzman's photographs, video, or device data at trial. *United States v. Scholl*, 166 F.3d 964, 972 (9th Cir. 1999), on which the government relies, involved checks shown to a witness so that their contents reached the jury. Nothing comparable happened here. The Government is well aware that almost the entirety of Mr. Guzman's testimony was a technical review of the improper methodology applied in this investigation that defied the recognized treatises of the NFPA 921 and the PMS 412.

**D. The Record Does Not Show Willful, Tactical Conduct by the Defense.**

The government concedes that exclusion requires a finding of willful conduct motivated by a desire for tactical advantage. Dkt. 375 at 6. The evidence it offers is the way Mr. Guzman labeled a folder on his own device and a remark in one of his emails. *Id.* at 4, 7. Those are the witness' words, not a decision by the defense to conceal anything. The defense's conduct points the other way: it produced within hours of the Court's ruling, corrected its production the same day, and two days after the ruling produced everything from the privilege file that Mr. Guzman authored, subject to redaction, with a log, before the government filed this brief. Nor could any tactical advantage exist: the government now holds every one of the materials at issue and is free to use them in cross-examination. In *Finley*, the Ninth Circuit reversed where a district court excluded a defense expert without the findings the

government now concedes are required – willful conduct motivated by a desire for tactical advantage. 301 F.3d at 1018.

## III. Any Remedy Should Be the Least Severe One That Cures the Concern.

Excluding a defense witness implicates the Sixth Amendment right to present a defense, and the Supreme Court has reserved that sanction for willful misconduct designed to gain a tactical advantage. *Taylor v. Illinois*, 484 U.S. 400, 415 (1988). Rule 16 itself lists lesser remedies first: the Court may order discovery, grant a continuance, or prohibit evidence, or enter "any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2). The just order here is the least severe one.

Striking the testimony of the defense's only origin-and-cause expert would not cure anything, because there is nothing left to cure. The government already holds every file it complains about, has reviewed them, and has told the Court how it intends to use them. Exclusion would serve only to punish Mr. Rinderknecht for counsel's production process and deprive the jury of the central defense evidence. If the Court finds any shortcoming, the appropriate relief is to allow the government to complete its cross-examination of Mr. Guzman using those materials, with whatever brief recess the Court finds necessary.

## CONCLUSION

The Court should deny the government's request to strike the testimony of Thomas D. Guzman.

Dated: November 17, 2026

Respectfully submitted,

HANEY LAW GROUP, PLLC

/s/ Steven A. Haney, Sr.
STEVEN A. HANEY, SR. (P63947)
Attorney for Defendant
JONATHAN RINDERKNECHT

# DECLARATION OF STEVEN A. HANEY, SR. REGARDING USE OF GENERATIVE ARTIFICIAL INTELLIGENCE

I, Steven A. Haney, Sr., declare as follows:

1. I am counsel of record for Defendant Jonathan Rinderknecht in this matter, admitted pro hac vice. I make this declaration under Section A.5 of the Court's Standing Order for Criminal Cases. I have personal knowledge of the facts stated in this declaration.

2. In preparing Defendant's Response to the Government's Supplemental Brief Regarding Sanctions (Dkt. 375), I used a generative artificial intelligence tool to assist in drafting it.

3. I have reviewed the document and verified that the content generated with the assistance of artificial intelligence is accurate and complies with my Rule 11 obligations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 17, 2026, at Los Angeles, California.

/s/ Steven A. Haney, Sr.
STEVEN A. HANEY, SR. (P63947)